[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Quinn v. Delaware Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-966.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-966

THE STATE EX REL. QUINN *v.* DELAWARE COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Quinn v. Delaware Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-966.]**

*Mandamus—Elections—R.C. 519.12(H)—Relator's petition satisfies statutory requirements for zoning-referendum-petitions—Writ requiring board to place referendum on May 2018 ballot granted.*

(No. 2018-0115—Submitted March 7, 2018—Decided March 15, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Graeme J. Quinn, seeks a writ of mandamus to compel respondent, Delaware County Board of Elections, to place a referendum on the May 8, 2018 ballot. For the reasons set forth below, we grant the writ.

## Background

### *Statutory framework*

{¶ 2} "Referendum" is the "process of referring to the electorate for approval * * * a law passed by the legislature." *Black's Law Dictionary* 1281 (6th Ed.1990). The Ohio Constitution expressly reserves to the people the right of referendum over legislation passed by the General Assembly, Ohio Constitution, Article II, Section 1c, and also over municipal ordinances, Ohio Constitution, Article II, Section 1f. However, the Ohio Constitution neither provides for nor forbids referenda over the legislative acts of a township. *Cook-Johnson Realty Co. v. Bertolini*, 15 Ohio St.2d 195, 200, 239 N.E.2d 80 (1968). The General Assembly has filled the gap, at least in part: once a township has adopted a zoning plan, subsequent amendments to that plan are, by statute, subject to referendum. R.C. 519.12(H).

{¶ 3} A township adopts an overarching zoning plan in three steps: (1) the township zoning commission recommends a plan, R.C. 519.05; (2) the township trustees approve a resolution adopting the plan, R.C. 519.10; and (3) a majority of the township electors approves the plan, R.C. 519.11. Thereafter, a proposed *amendment* to the plan may be initiated in any one of three ways: (1) by a *motion* of the township zoning commission, (2) by the passage of a *resolution* by the township trustees, or (3) by the submission of an *application* by an owner or lessee of property within the area proposed to be changed. R.C. 519.12(A)(1). After notice and a hearing, the township zoning commission has 30 days in which to recommend that the amendment be approved, denied, or approved with modifications. R.C. 519.12(E). The township trustees then conduct their own hearing and vote on whether to accept, reject, or modify the commission's recommendation. R.C. 519.12(H).

**{¶ 4}** If the trustees approve a resolution adopting the proposed amendment, then the amendment will become effective 30 days later *unless* within that time period, the trustees receive a petition, signed by the requisite number of eligible electors in the relevant area of the township,[1] asking the trustees to submit the amendment to the electors of that area for approval or rejection. *Id.* Upon receiving a zoning-amendment referendum petition, the township trustees "shall certify the petition to the board of elections" within 14 days. *Id.* The elections board must then determine "the sufficiency and validity of [the] petition." *Id.*

**{¶ 5}** "If the board of elections determines that a petition is sufficient and valid, the question shall be voted upon at a special election * * *." *Id.* However, opponents of the referendum have one mechanism available to them to prevent the petition from appearing on the ballot: a protest.

> [A] board of elections shall accept any petition * * * unless one of the following occurs:
>
> * * *
>
> (2) A written protest against the petition * * *, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law.

R.C. 3501.39(A).

---

[1] The petition must contain valid signatures equal in number to at least 8 percent of the total votes cast for all candidates for governor in that area in the most recent general election at which a governor was elected. R.C. 519.12(H).

*Factual and procedural background*

**{¶ 6}** This case concerns a 24.312-acre parcel of real property located at 5427 State Route 37 East in Berlin Township, Delaware County. Intervening respondent Boatman, Inc., is the titled owner of the property.

**{¶ 7}** On November 8, 2016, intervening respondent Savko Bros. Properties X, L.L.C. ("Savko") submitted an informal proposal to the Berlin Township Zoning Commission ("BZC") for an industrial and commercial development on the site. The BZC assigned the project zoning case No. BZC 17-006. Savko submitted a revised application on May 18, 2017, designated No. (R) BZC 17-006. At its June 27, 2017 meeting, the BZC unanimously approved the revised application, after Savko agreed to additional terms and conditions for the project.

**{¶ 8}** On October 9, 2017, the Berlin Township trustees adopted Berlin Township Zoning Resolution No. 17-10-09 to "approve BZC Case 17-006 Boatman Inc. with exhibits 1 thru 18 with modifications of the BZC's recommendation with the notes [sic] changes to rezone the property at 5427 S.R. 37 East Delaware Ohio from Neighborhood Commercial District & Farm Residential District to Planned Industrial District."

**{¶ 9}** On November 6, 2017, Quinn submitted a petition for a referendum, along with signed part-petitions. Each part-petition was on Secretary of State Form No. 6-O, "Petition for a Township Zoning Referendum," and included the following (with the information provided by Quinn indicated by italics):

*Berlin Township Zoning Commission Case 17-006 Boatman, Inc.*

(Name and number of the proposal, if any)

A proposal to amend the zoning map of the unincorporated area of *Berlin* Township, *Delaware* County, Ohio, adopted on the *9th* day of *October*, *2017*.

The following is a brief summary of the proposed zoning amendment:

*Resolution 17-10-09 to Approve BZC Case 17-006 Boatman Inc. with Exhibits 1 through 18 with modifications of the BZC's recommendation with the noted changes to rezone the property at 5427 State Route 37 East, Delaware, Ohio from Neighborhood Commercial District and Farm Residential District to Planned Industrial District.*

{¶ 10} On November 13, 2017, the Berlin Township trustees adopted a resolution finding the petition to be valid on its face and certifying the petition to the board of elections to determine the sufficiency and validity of the petition. On November 28, the elections board verified that the petition had a sufficient number of valid signatures and certified the petition to appear on the May 2018 ballot.

{¶ 11} The elections board's minutes indicate that immediately after the certification vote, two interested parties voiced an oral protest against "the legitimacy of the Referendum, specifically its failure to comply with section 519 of the Ohio Revised Code in several respects." The board scheduled a protest hearing for January 9, 2018, "assuming a formal protest [would] be filed in the coming week."

{¶ 12} The next day, Savko submitted a formal written protest to the elections board, in which it wrote:

We understand that the Berlin Township Board of Trustees refused to certify the validity and sufficiency of the Petition and instead transmitted the Petition to the Delaware County Board of Elections for its review of the Petition's validity and sufficiency.

We have reviewed the Petition and it contains facial defects that violate Ohio election law, including the requirements set forth in R.C. § 519.12(H), requiring the Petition's invalidation. These defects prevent the referendum from proceeding to the ballot.

R.C. 519.12(H) sets forth the information that a valid zoning-referendum petition must contain: "Each part of this petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents."

{¶ 13} The elections board later rescheduled the protest hearing for January 18, 2018. On January 17, 2018, Savko filed and served on Quinn a brief setting forth detailed legal arguments in support of the protest. The brief identified the following alleged defects in the petition:

- The petition fails to satisfy the requirement in R.C. 519.12(H) that it contain the "full and correct title" of the zoning-amendment resolution. The petition refers to the BZC case number ("Berlin Township Zoning Commission Case 17-006 Boatman, Inc.") instead of the township zoning resolution number ("Berlin Township Zoning Resolution No. 17-10-09").

- Even assuming that it is acceptable for the petition to use the BZC case number as the petition title (which Savko disputes), the petition provides the wrong case number—BZC 17-006 rather than (R) BZC 17-006.

- The petition fails to satisfy the requirement in R.C. 519.12(H) that it "furnish[] the name by which the amendment is known." The name "Berlin Township Zoning Resolution Number 17-10-09" does not appear on the petition.

- The mandatory "brief summary of [the resolution's] contents" is misleading and inaccurate and contains numerous material omissions. Specifically, the brief

6

alleges that the petition misrepresents the zoning proposal by failing to mention development restrictions to which Savko had agreed, modifications to the BZC's recommendation made by the trustees, or the benefits to the community from the project.

{¶ 14} On January 18, 2018, the elections board held a hearing on the protest, at which it heard testimony from two witnesses, received documents into evidence, and considered oral argument from counsel. At the outset of the hearing, Quinn objected to the board's entertaining challenges based on alleged defects in the title, amendment name, or summary contained in the petition. Quinn noted that a written protest must "nam[e] *specific* objections" (emphasis added), R.C. 3501.39(A)(2), and argued that Savko's November 29, 2017 protest letter lacked specificity. However, the board concluded that the language of Savko's letter was "broad enough to encompass all of the issues."

{¶ 15} By a vote of three to one, the board approved a motion "to sustain the protest and decertify the measure pending based upon the title as contained in the petition." It tied two to two on a second motion, "to sustain [the] protest and decertify the measure based upon the sufficiency of the summary contained within the petition." As a result of the vote on the first motion, Quinn's referendum petition was not certified for placement on the May 2018 ballot.

{¶ 16} On January 23, 2018, Quinn filed in this court the present complaint for a writ of mandamus against the board of elections. The board filed an answer on January 29. On February 16, 2018, we converted the case to an expedited election matter, granted an alternative writ, issued a schedule for the submission of briefs and evidence, and granted a motion of Boatman and Savko to intervene as respondents. __ Ohio St.3d __, 2018-Ohio-599, __ N.E.3d __. The parties have submitted briefs and evidence, and the matter is ripe for decision.

**Legal Analysis**

{¶ 17} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given that the May 2018 election is imminent, Quinn does not have an adequate remedy in the ordinary course of the law. *See State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 17 (holding that relator had no adequate remedy at law because election was imminent at time county elections board denied relator's protest); *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18 (same).

{¶ 18} When reviewing the decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 29. In his merit brief, Quinn presents five arguments as to how the board of elections abused its discretion and/or acted in clear disregard of applicable law.

{¶ 19} Quinn's first two assignments of error are interrelated and renew his argument that Savko's protest letter lacked the specificity required to challenge the title, amendment name, or summary contained in the petition:

> **ASSIGNMENT OF ERROR ONE:** Whether the board of elections abused its discretion or acted in clear disregard of statutes or pertinent law by not certifying the referendum petition after the one specific issue named in the notice of protest was resolved by the parties prior to the board's vote to reverse itself.

8

**ASSIGNMENT OF ERROR TWO:** Whether the board of elections abused its discretion or acted in clear disregard of statutes or pertinent law for [sic] considering argument and evidence on "fatal defects" because the so-called "fatal defects" referenced in the notice of protest lacked specificity under Ohio Rev. Code § 3501.39.

(Boldface and capitalization sic.) In response, Boatman and Savko argue that Savko's protest letter, coupled with its prehearing brief, gave Quinn adequate notice of the bases for the protest. Alternatively, they argue essentially that notice is irrelevant because the elections board has the statutory authority to reject a defective petition even in the absence of a protest.

{¶ 20} "One of the evident purposes of [R.C. 3501.39(A)'s specificity] requirement is to give notice to the petitioner and the opportunity to present evidence to rebut the objections specified." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 308, 686 N.E.2d 238 (1997). In *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 712 N.E.2d 696 (1999), for example, a protest challenging the sufficiency of a petition's signatures lacked specificity because it failed to specify which of the more than 2,400 signatures were allegedly defective, leaving the petition committee unable to prepare a defense. *Id*. at 113.

{¶ 21} Savko's protest letter contains a single reference to R.C. 519.12(H). In addition to establishing the title, amendment-name, and summary requirements, R.C. 519.12(H) sets forth the basic form and contents of a zoning-referendum petition, sets forth the mandatory content of the circulator's statement, and requires that an appropriate map of the area affected be attached. However, for the most part, these are issues that can be assessed by reviewing the face of the petition, without referring to external evidence or testimony. For example, the alleged lack of specificity in Savko's protest letter did not hamper Quinn's ability to defend

against Savko's challenge to the accuracy of the title contained in the petition. This conclusion is consistent with the elections board's authority to disqualify a petition from appearing on a ballot based on defects apparent on the face of the petition. *See* R.C. 3501.11(K)(1). A different rule may apply to Savko's objection that the petition's summary does not fairly and accurately reflect the zoning-amendment resolution, because that issue requires a fact-intensive inquiry that cannot be resolved by merely reviewing the face of the petition. But as explained below, the validity of the petition's summary is not ripe for resolution, and we therefore decline to consider at this time whether the protest letter is sufficiently specific on that point.

{¶ 22} We reject Quinn's first and second assignments of error.

{¶ 23} Assignments of error Nos. 3 and 4 are more in the nature of a due-process or fundamental-fairness claim:

> **ASSIGNMENT OF ERROR THREE:** Whether the board of elections abused its discretion or acted in clear disregard of statutes or pertinent law by considering issues that were not briefed for the board until the day before its hearing.
>
> **ASSIGNMENT OF ERROR FOUR:** Whether the board of elections abused its discretion or acted in clear disregard of statutes or pertinent law by considering issues that were not briefed for the relator until the day before the board hearing, while allowing protestor fifty (50) days to research and frame its arguments against relator's petitions.

(Boldface and capitalization sic.)

{¶ 24} Quinn argues that because Savko failed to spell out specific objections in its protest letter, it should not have been permitted to raise multiple

10

issues in a brief provided to Quinn only one day before the hearing. But Quinn has identified no rule requiring a protester to submit a legal brief, either by a date certain or *at all*. Either the protest letter gave adequate notice or it did not; neither the hearing brief nor the timing of its filing has any legal relevance. We therefore reject Quinn's third and fourth assignments of error.

**{¶ 25}** In his final assignment of error, Quinn asserts that on the merits, the elections board erred in refusing to place the referendum on the ballot:

> **ASSIGNMENT OF ERROR FIVE:** Whether the board of elections abused its discretion or acted in clear disregard of statutes or pertinent law by refusing to certify petition parts that had borrowed verbatim from a trustees' resolution to satisfy both the full-and-correct title and brief summary requirements of Ohio Rev. Code § 519.12(H).

(Boldface and capitalization sic.)

**{¶ 26}** R.C. 519.12(H) imposes four distinct requirements concerning the content of a zoning-referendum petition:

(1) "the number of * * * the zoning amendment resolution, motion, or application,"

(2) "the full and correct title, if any, of the zoning amendment resolution, motion, or application,"

(3) "the name by which the amendment is known," and

(4) "a brief summary of the contents."

*State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 19. Savko's protest to the board of elections asserted that Quinn's petition did not comply with these requirements.

11

**{¶ 27}** The number and title of the *resolution* in this case is "Berlin Township Zoning Resolution No. 17-10-09." *See State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 14, 36. That nomenclature does not appear in full on the part-petitions. Instead, in the top line of each part-petition form, Quinn typed "Berlin Township Zoning Commission Case 17-006 Boatman, Inc.," a reference to the BZC-assigned case number. And the petition's summary refers to "Resolution 17-10-09."

**{¶ 28}** One elections board member, Steven Cuckler, explained that he voted to sustain the protest because the petition does not include the title of the trustees' resolution:

> [T]he title references the township zoning commission case, ultimately referendum, and 519.12 of the Revised Code, you cannot referendum a zoning commission outcome. You can only referendum that of a trustee outcome. And so therefore, the name and number referencing just the zoning commission is not accurate or it failed to list the trustees' resolution.

Boatman and Savko claim that *Tam O'Shanter* supports this result; according to them, we held in *Tam O'Shanter* that "in a case involving a zoning amendment resolution by a board of trustees, the referendum petition should contain the full and correct title of the *resolution* actually approved by the trustees rather than the original application." (Emphasis sic.)

**{¶ 29}** We disagree. *Tam O'Shanter* recognizes that the reference to "resolution, motion, or application" in R.C. 519.12(H) mirrors the three ways by which a zoning amendment may be initiated under R.C. 519.12(A)(1). 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 18. Thus, the appropriate title to use depends on the method of initiation: because the current amendment was

12

proposed by application, R.C. 519.12(H) requires the referendum petition to contain the title of the application. *Id*. at ¶ 19. This conclusion is supported by our holding in *Tam O'Shanter* that R.C. 519.12(H) is written in the disjunctive: "the full and correct title, if any, of the zoning amendment resolution, motion, *or* application." (Emphasis added). *Id.* at ¶ 23 (holding that the phrase "zoning amendment" modifies the phrase "resolution, motion, or application").

**{¶ 30}** In the alternative, Boatman and Savko contend that even if the full and correct title of the application suffices, Quinn's petition provides the wrong title: it refers to the BZC case number of the original application, "17-006," instead of the BZC case number of the revised application, "(R) 17-006." The parties devote significant space to debating whether a petition must strictly comply with R.C. 519.12(H) or whether substantial compliance will do. That is not an open question: as with nearly all election laws, R.C. 519.12(H) requires strict compliance. *Tam O'Shanter* at ¶ 20; *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 39. The difficulty Boatman and Savko's objection presents is that it is unclear what the correct title of the application is.

**{¶ 31}** The BZC designated Savko's revised proposal as a new application and assigned to it a new zoning case number, "(R) BZC 17-006." But the BZC did not use that title consistently. In its notice to the owners of adjacent properties, it wrote that "on Tuesday, June 13, 2017, the Berlin Township Zoning Commission will be hearing the following *REVISED*: BZC 17-006, filed by Boatman, Inc." (Capitalization and underlining sic.) Likewise, in its published notice of public meeting, the BZC referred to "BZC 17-006," with the word "revised" appearing only in the heading of the posting. Nor did the township trustees use "(R)" in their board minutes. The official minutes twice identify the matter under consideration as "BZC 17-006 Boatman Inc."—once when the topic arose on the agenda and again in the text of the resolution approving the application.

**{¶ 32}** The evidence in the record establishes that the "(R)" designation was not a part of the application's official title. And it would unjustly interfere with the right of referendum to require Quinn to strictly adhere to a convention that the zoning board and the trustees did not themselves follow. We therefore hold that the petition satisfies the number and "full-and-correct-title" requirements of R.C. 519.12(H).

**{¶ 33}** The next requirement of R.C. 519.12(H) is that a zoning-referendum petition include "the name by which the amendment is known." Here again, Boatman and Savko assume that the "name" requirement equates to the title of the resolution. But we clarified in *Tam O'Shanter* that " 'the full and correct title * * * *of the zoning amendment resolution*' " is different from " 'the name by which the *amendment* is known.' " (Emphasis added in *Tam O'Shanter*.) 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 23, quoting R.C. 519.12(H). The way to establish the "name by which the amendment is known" is to examine "evidence that shows how the township board of trustees—the promulgating entity— identified the zoning *amendment*." (Emphasis added.) *Id*. at ¶ 31. In plain terms, the name requirement of R.C. 519.12(H) looks to what the trustees called the *proposal*, not what they called the legislative vehicle that would enact the proposal. Under that standard, the name by which the amendment is known is "BZC 17-006 Boatman Inc.," which is how the trustees referred to it in their minutes. We therefore hold that the petition satisfies the name requirement of R.C. 519.12(H).

**{¶ 34}** Finally, R.C. 519.12(H) requires a zoning-referendum petition to contain a brief summary of the zoning-amendment resolution approved by the trustees. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 80 Ohio St.3d 176, 179, 685 N.E.2d 502 (1997). The summary must be "accurate and unambiguous." *S.I. Dev. & Constr. v. Medina Cty. Bd. of Elections*, 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17. " '[I]f the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the

14

petition is invalid and may not form the basis for submission to a vote.' " *State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 25, quoting *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 141, 465 N.E.2d 883 (1984).

{¶ 35} Boatman and Savko allege that omissions from the summary Quinn provided make it unfairly one-sided. But before considering the merits of their objection to the summary, we must decide whether the issue is properly before us.

{¶ 36} The board of elections considered the summary in its second motion, and the vote to sustain the protest on that basis resulted in a two-to-two tie. When a board of elections arrives at a tie vote, the chair must submit the question to the secretary of state, who shall decide the question. R.C. 3501.11(X). Pursuant to that statute, the board submitted the question to Ohio Secretary of State Jon Husted, who declined to break the tie, writing:

> The board's 3-1 vote regarding the title has effectively removed the zoning referendum question from the May 8, 2018 Primary Election Ballot and a decision regarding the brief summary will have no bearing on that effect. Accordingly, based on the board's initial vote the tie vote of the board is not a "matter in controversy" [R.C. 3501.11(X)] requiring a tie-breaking decision.

In its merit brief, the board of elections, citing the secretary's letter, suggests that the issue is not ripe for adjudication. We agree.

{¶ 37} To be justiciable, a claim must be ripe for review, and a claim is not ripe "if it rests on contingent events that may never occur at all." *State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E.3d 463, ¶ 21 (plurality opinion). As the case is currently postured, Savko's protest was unsuccessful as to the petition's summary, because the board of elections could not muster a majority

to disqualify the referendum from the ballot on that basis. Only if Secretary Husted disqualifies the referendum from the ballot on that basis will Quinn have a ripe, justiciable claim on that issue. *See also State ex rel. Husted v. Brunner*, 123 Ohio St.3d 119, 2009-Ohio-4805, 914 N.E.2d 397, ¶ 20 ("The secretary of state has not yet exercised her discretion to break the tie vote submitted by the board of elections * * *, so any action challenging a potentially adverse decision is premature"). We therefore decline to pass upon the validity of the petition's summary at this time.

**{¶ 38}** Based on the foregoing, we find Quinn's fifth assignment of error well taken and we grant the requested writ of mandamus.

Writ granted.

O'CONNOR, C.J., and O'DONNELL, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

KENNEDY, J., concurs in judgment only.

_____

Manos, Martin & Pergram Co., L.P.A., and Andrew P. Wecker, for relator.

Laura M. Comek Law, L.L.C., and Laura MacGregor Comek, for respondent.

Vorys, Sater, Seymour & Pease, L.L.P., Joseph R. Miller, John M. Kuhl, Christopher L. Ingram, and Elizabeth S. Alexander, for intervening respondents.

_____