[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hillside Creek Farms v. Clark Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-3214.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3214

THE STATE EX REL. HILLSIDE CREEK FARMS, L.L.C., ET AL., *v*. CLARK COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hillside Creek Farms v. Clark Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-3214.]

*Prohibition—Writ of prohibition sought to compel the board of elections to remove a referendum on a zoning amendment from the November 2021 ballot— Board of elections did not abuse its discretion or fail to follow clearly established law by denying a protest to a zoning-referendum petition, because the petition complied with the requirements set forth in R.C. 303.12(H)—Writ denied.*

(No. 2021-1102—Submitted September 15, 2021—Decided September 16, 2021.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relators, Hillside Creek Farms, L.L.C. ("Hillside"), and Gerald L. Shaw,[1] seek a writ of prohibition to bar respondent, the Clark County Board of Elections, from placing a referendum on the November 2021 election ballot. For the reasons set forth herein, we deny the writ.

## I. BACKGROUND

{¶ 2} This case concerns a 42.05-acre parcel of real property located on Stine Road in Mad River Township, Clark County. Hillside is the titled owner of the property, which is currently zoned agricultural and rural residential.

{¶ 3} On April 5, 2021, Hillside filed an application to rezone the property to a Planned District–Residential classification. The application was assigned case No. Z-2021-05. On May 5, the Clark County Planning Commission voted to recommend denial of the rezoning request to the Clark County Rural Zoning Commission. On May 13, the Rural Zoning Commission voted to table the rezoning request and to ask Hillside to respond to eight of its recommendations for the rezoning proposal.

{¶ 4} On June 3, Hillside filed an amended rezoning application. On June 28, the Clark County Board of County Commissioners approved the amended rezoning application. The board of county commissioners' resolution consists of a six-page document, captioned "Resolution 2021-0433," which contains the minutes of the June 3 meeting.

{¶ 5} On or about July 21, a petition was filed with the board of county commissioners requesting a ballot referendum on the Hillside rezoning resolution. Each part-petition was on Secretary of State Form No. 6-N, "Petition for a County Zoning Referendum." On each part-petition in the space for the "[n]ame and number of the proposal, if any," the petitioners wrote "Resolution 2021-0433

---

1. Shaw is a qualified elector who resides in Mad River Township.

Rezoning Case Z-2021-05." The petitioners provided the following summary of the proposal on each part-petition:

> Rezoning case Z-2021-05 being approximately 42.05 acres located at 6766 Stine Road, to rezone from A-1 (Agricultural District) and R-1 (Rural Residence District) to PD-R (Planned District Residential) for a 162 lot single-family subdivision.

The commissioners voted to send the petition to the board of elections.

{¶ 6} In early August, Hillside and Shaw filed a protest against the zoning-referendum petition. In their protest letter, Hillside and Shaw raised three objections to the petition: (1) the petition fails to include the full and correct title of the zoning application in violation of R.C. 303.12(H), (2) the petition fails to include the name by which the zoning amendment is known in violation of R.C. 303.12(H), and (3) the petition's summary of the zoning amendment contains several material omissions that could mislead or confuse the average person in violation of R.C. 303.12(H). With respect to the third objection, Hillside and Shaw spelled out six commitments that Hillside had allegedly made that were part of the application as approved and that they contend should have been included in the petition's summary.

{¶ 7} The board of elections held a protest hearing on September 2. At the close of the hearing, the board-of-elections members voted unanimously to deny the protest and place the referendum on the November ballot.

## II. PROCEDURAL HISTORY

{¶ 8} Hillside and Shaw filed a complaint for a writ of prohibition in this court on September 7. The parties have submitted evidence and merit briefing in accordance with the expedited schedule. *See* ___ Ohio St.3d ___, 2021-Ohio-3082, ___ N.E.3d ___.

### III. LEGAL ANALYSIS

#### A. The standard of review and the elements of prohibition

{¶ 9} To obtain a writ of prohibition in an election case, the relators must show that (1) the board of elections exercised quasi-judicial power, (2) the exercise of that power was unauthorized by law, and (3) the relators have no adequate remedy in the ordinary course of the law. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 27. If all three elements are proved, then a writ of prohibition will issue. *Georgetown v. Brown Cty. Bd. of Elections*, 158 Ohio St. 3d 4, 2019-Ohio-3915, 139 N.E.3d 852, ¶ 16.

{¶ 10} When reviewing the decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *McCord* at ¶ 30. Hillside and Shaw do not allege fraud or corruption. Rather, they contend that the board of elections abused its discretion or failed to follow clearly established law in placing the zoning referendum on the November ballot.

{¶ 11} The board of elections concedes that the first and third elements of the prohibition analysis are not in dispute. "Quasi-judicial authority is the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Registrar, Ohio BMV*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). A board of elections exercises quasi-judicial authority when it decides a protest after conducting a mandatory hearing that includes sworn testimony. *State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 12. "R.C. 3501.39(A) requires a board of elections to conduct a quasi-judicial hearing on a petition protest." *Id.* And due to the proximity of the November 2 election, Hillside and Shaw lack an adequate remedy in the ordinary course of the law. *See State ex rel. Yeager v. Richland Cty. Bd. of Elections*, 136 Ohio St.3d 327, 2013-Ohio-3682,

995 N.E.2d 228, ¶ 16. The sole issue, therefore, is whether the board of elections' decision to approve the zoning referendum for placement on the ballot was authorized by law.

### B. The statutory requirements for a zoning-referendum petition

{¶ 12} R.C. 303.12(H) requires that each part-petition seeking a referendum on a county zoning amendment "shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents." *See State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 25. The language of R.C. 303.12(H) for county zoning-referendum petitions is identical to that of R.C. 519.12(H), which governs township zoning-referendum petitions, so we have relied on precedent involving either or both sections when resolving zoning-referendum petition challenges. *See, e.g., State ex rel. Donaldson v. Delaware Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2021-Ohio-2943, ___ N.E.3d ___, ¶ 14. A petition must strictly comply with these requirements. *State ex rel. Quinn v. Delaware Cty. Bd. of Elections*, 152 Ohio St.3d 568, 2018-Ohio-966, 99 N.E.3d 362, ¶ 30. In their protest to the board of elections, Hillside and Shaw asserted that the zoning-referendum petition did not comply with these mandatory elements.

### 1. Did the petition satisfy the "full-and-correct-title" requirement?

{¶ 13} The part-petitions identified the title of the application as "Resolution 2021-0433 Rezoning Case Z-2021-05." Hillside and Shaw contend that the part-petitions did not include the full title, because the phrase "Hillside Creek Farms" is part of the title.

{¶ 14} A zoning amendment may be initiated in one of three ways: by resolution, by motion, or by application. R.C. 303.12(A)(1). "[I]n a case involving a zoning-amendment application by a property owner (such as this), the statute imposes four distinct requirements concerning the content of a referendum

petition." *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 19. One requirement is that the zoning-referendum petition contain the full and correct title of the *application.  Id*.

{¶ 15} However, a rezoning application is not required to have a title, as evidenced by the fact that R.C. 303.12(H) calls for the inclusion of the correct title "*if any*." (Emphasis added.) Hillside did not designate a title on its application. The phrase "Hillside Creek Farms" does not appear on the application form itself, except in the blanks identifying the name of the property owner. Because there is no title on the rezoning application, the zoning-referendum petition was not required to include a title. *See Tam O'Shanter*, at ¶ 27 ("Because [the] application includes no discernable title, no title could be included in the referendum petition").

{¶ 16} Hillside responds that it included its rezoning application form within a larger package. The cover page indicated that the package was "Submitted for: **Hillside Creek Farms**." (Boldface sic.) But that phrase is ambiguous at best: Was the proposal submitted "for" (meaning "in furtherance of") a *project* called Hillside Creek Farms, or was it submitted "for" (meaning "on behalf of") the property owner named Hillside Creek Farms? Hillside also argues that the phrase "Hillside Creek Farms" appeared throughout the documents attached to the application. But Hillside distinguishes between the *application*, which is a discrete form, and the supporting documentation. Hillside cites no authority for the proposition that a referendum proponent must discern a title from the supporting documentation.

{¶ 17} In addition, Hillside notes that the phrase appears in the minutes of the various boards and commissions that considered the rezoning application. For example, the May 13 minutes of the Rural Zoning Commission introduce the topic of the application under the following heading:

**Rezoning Case #Z-2021-05 ~ Property Owner/ Applicant: Hillside Creek Farms LLC; Agent: Gary Smith, G2 Planning & Design ~ Location: 6766 Stine Rd., Mad River Twp. ~ Request: Rezone 42.05 acres from A-1 and R-1 to PD-R for a 170-lot single-family subdivision.**

(Boldface and underlining sic.) But even if the Rural Zoning Commission intended this entire paragraph to be a title—which is not at all clear from the minutes—that fact would be irrelevant. The application—not the boards or commissions that consider the application—determines the title.

{¶ 18} Finally, and most critically, Hillside relies on the testimony of Gary Smith at the protest hearing. Smith and his company served as lead consultant for Hillside and prepared the rezoning application and amended application. Smith testified that in his opinion, "[t]he first page is really the title page of the application." Given that the cover page does not clearly identify "Hillside Creek Farms" as the title of the application, we conclude that the board of elections did not abuse its discretion or fail to follow clearly established law by disregarding this testimony.

{¶ 19} The rezoning application itself contains no title; therefore the board of elections did not abuse its discretion or fail to follow clearly established law when it declined to invalidate the zoning-referendum petition on this basis.

*2. Did the petition include "the name by which the amendment is known"?*

{¶ 20} The next requirement of R.C. 303.12(H) is that the zoning-referendum petition include "the name by which the amendment is known." The full and correct title, discussed in the previous section, is different from "the *name* by which the amendment is known." *Tam O'Shanter*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 23. The way to establish the "name by which the amendment is known" is to examine "evidence that shows how the [board of county

commissioners]—the promulgating entity—identified the zoning *amendment*." (Emphasis added.) *Id*. at ¶ 31. In plain terms, the name requirement is determined by what the commissioners called the zoning-amendment *proposal*, not what they called the legislative vehicle that would enact the proposal. *See Quinn*, 152 Ohio St.3d 568, 2018-Ohio-966, 99 N.E.3d 362, at ¶ 33.

{¶ 21} The caption of the minutes that became the board of county commissioners' official resolution indicates that the board was conducting a "Public Hearing for Rezoning Case Z-2021-05 filed by Hillside Creek Farms LLC in Mad River Township." Here, the intent to refer to the application as "Case Z-2021-05" and not as "Hillside Creek Farms" is clear for two reasons. First, the caption refers to "Hillside Creek Farms *LLC*," which can only mean the entity that is the property owner and not the project that is the subject of the rezoning request. And second, the very next paragraph, which is the actual text of the minutes, repeats the reference to "case Z-2021-05," with no mention of Hillside Creek Farms.

{¶ 22} The zoning-referendum part-petitions properly identified the rezoning application as "Case Z-2021-05." Hillside proffers a newspaper article and the testimony given by Smith to suggest that other people referred to the rezoning application as "Hillside Creek Farms." But the only requirement that the Revised Code imposes is to use the name by which the zoning amendment—i.e., the rezoning application—is known *to the body adopting it*. *Tam O'Shanter* at ¶ 31.

{¶ 23} We hold that the board of elections did not abuse its discretion or fail to follow clearly established law when it declined to invalidate the zoning-referendum petition on this basis.

### *3. Did the petition include "a brief summary of the contents"?*

{¶ 24} On June 3, Hillside filed an amended rezoning application. Hillside alleges that the amended application contained material changes in response to public concerns and that by adopting the application "as presented," the board

signaled the significance of those amendments to its decision. Therefore, the absence of each term from the zoning-referendum-petition summary is, in Hillside's view, a material omission.

**a. Omission No. 1: An agreement to place a *"buffer zone"* of trees along the property's border with a neighboring development**

{¶ 25} The amended rezoning application added a condition requiring the developer to "install a landscape screen between the proposed homes and the existing homes as indicated on the landscape plans, Exhibit G4."

**b. Omission No. 2: An agreement to increase the amount of open space in the development by increasing the minimum lot size and minimum side setbacks**

{¶ 26} The amended rezoning application changed the dimensions of the project. For example, it reduced the number of single-family homes in the development from 170 to 162, and it increased the minimum lot width from 50 feet to 52 feet.

**c. Omission No. 3: An agreement to preserve a historic cemetery on the property**

{¶ 27} The amended rezoning application added a commitment that the Hillside Creek Farms Homeowners Association would mow and maintain the existing cemetery and that Hillside would install a marker at the cemetery entrance and a fence around the cemetery.

**d. Omission No. 4: An agreement to ensure "architectural diversity" in the development**

{¶ 28} Section 1.09(C) of the amended rezoning application reads:

Architectural Diversity: To promote architectural diversity throughout the community, no single-family house may be constructed on any lot directly across the street from a house with

the same front elevation or color, or on any lot directly adjacent a
house with the same front elevation or color.

(Underlining sic.)

### e. Omission No. 5: An agreement to require the development's homeowners association to be responsible for maintaining the common open space, the cemetery, and the stormwater basins

{¶ 29} Section 1.12 of the amended rezoning application provides that "[t]he common open space, cemetery, and stormwater basins, shall be owned and maintained by a Homeowners Association for the development."

### f. Omission No. 6: Efforts to reduce flooding and drainage issues caused by a neighboring housing development

{¶ 30} Smith testified that in response to flooding concerns, the developer increased the size of the storm drains to accommodate additional water flow.

{¶ 31} R.C. 303.12(H) requires each part-petition to contain a brief summary of the zoning resolution approved by the board of county commissioners. *See State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 80 Ohio St.3d 176, 179, 685 N.E.2d 502 (1997). The summary must be "accurate and unambiguous." *S.I. Dev. & Constr. v. Medina Cty. Bd. of Elections*, 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17. " 'If the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote.' " *State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 25, quoting *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 141, 465 N.E.2d 883 (1984).

{¶ 32} The "brief summary" requirement refers to the resolution approved by the board of county commissioners. *State ex rel. C.V. Perry & Co. v. Licking Cty. Bd. of Elections*, 94 Ohio St.3d 442, 444-445, 764 N.E.2d 411 (2002). And

"when a referendum petition's summary of a resolution contains substantially the same wording as the resolution itself," the summary complies with the statutory requirement. *McCord*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, at ¶ 43. We hold that the board of elections did not abuse its discretion or fail to follow clearly established law when it concluded that the alleged omissions were immaterial.

{¶ 33} We recently identified the type of information that a valid summary must include in order to give prospective voters a fair understanding of the measure. First, the summary must identify the location of the relevant property. *State ex rel. Donaldson v. Delaware Cty. Bd. of Elections*, __ Ohio St.3d __, 2021-Ohio-2943, __ N.E.3d __, ¶ 14. And second, the summary must " 'apprise the reader of the present zoning status of the land and the precise nature of the requested change.' " *Id*. at ¶ 15, quoting *Shelly & Sands, Inc.* at 142; see also *O'Beirne* at 181 (holding that the present use and zoning of the property is material information). The petition in this case included all this information.

{¶ 34} Hillside contends that the six aforementioned items are material *not* because they lie at the heart of the proposal, but because they remedy the concerns that have made the project controversial. But it is not the responsibility of the referendum's advocates to educate themselves about the history of the proposal, much less reflect that history in their summary. Their responsibility is to accurately reflect the zoning amendment, and the board of elections did not abuse its discretion or fail to follow clearly established law when it concluded that the petition in this case satisfied that obligation.

{¶ 35} For these reasons, we deny the writ of prohibition.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

McTigue & Colombo, L.L.C., and J. Corey Colombo, Donald J. McTigue, and Derek S. Clinger, for relators.

Daniel P. Driscoll, Clark County Prosecuting Attorney, and Andrew P. Pickering, Assistant Prosecuting Attorney, for respondent.

_____