THE STATE EX REL. LINNABARY *v.* HUSTED.

[Cite as *State ex rel. Linnabary v. Husted,* 138 Ohio St.3d 535,

2014-Ohio-1417.]

*Elections—Nominating petitions—Protests—Authority of secretary of state to act in absence of protest—R.C. 3501.39—Independent contractors as circulators—Disclosure of employer required—R.C. 3501.38(E)(1)—Part petitions invalidated.*

(No. 2014-0359—Submitted March 26, 2014—Decided April 3, 2014.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** In this expedited election case, relator, Steven Linnabary, seeks a writ of mandamus compelling respondent, Ohio Secretary of State Jon Husted, to certify his candidacy as Libertarian Party candidate for Ohio attorney general in the May 6, 2014 primary election. For the following reasons, we deny the writ. We also deny the motion to intervene of Gregory Felsoci.

*Facts and procedural history*

**{¶ 2}** The relevant facts are not in dispute.

**{¶ 3}** On December 30, 2013, Linnabary filed a declaration of candidacy and nominating petition to run in the Libertarian primary for the office of attorney general. Linnabary submitted 94 part petitions, containing 968 signatures. Upon review, the local boards of elections determined that 519 of the signatures were valid, more than the 500 signatures required by law to appear on the ballot. Thereafter, Husted certified Linnabary's candidacy for the May 6, 2014 ballot.

**{¶ 4}** On February 21, 2014, Carl Michael Akers filed a protest against Linnabary's candidacy. Husted appointed Bradley A. Smith to serve as hearing

officer at the protest hearing. Smith consolidated the Akers protest with separate protests filed against the Libertarian candidates for governor and lieutenant governor. One of the protests against the Libertarian candidates for governor and lieutenant governor was filed by proposed intervenor Gregory Felsoci.

{¶ 5} The hearing took place on March 4, 2014.

{¶ 6} With respect to the Linnabary protest, Smith heard evidence pertaining to three issues: (1) whether Akers had standing to protest Linnabary's candidacy, (2) whether Oscar Hatchett, a circulator of petitions for Linnabary, was a member of the Libertarian Party and thus eligible to circulate petitions, and (3) whether the part petitions circulated by Hatchett were defective because they failed to identify any employer for Hatchett.

{¶ 7} On March 7, 2014, Smith issued a report and recommendation on the consolidated protests. Smith rejected Linnabary's assertion that Akers lacked standing to protest his candidacy. As to the merits of the protest, Smith first determined that Hatchett did meet the requirement in R.C. 3513.05 that as a circulator, he be a member of the Libertarian Party, and Smith therefore recommended rejection of the protest on that point. Second, Smith concluded that Hatchett acted as an independent contractor when circulating Linnabary's petitions and that Hatchett violated R.C. 3501.38(E)(1) by failing to identify his employer.

{¶ 8} Based on these conclusions, Smith recommended rejection of all part petitions circulated by Hatchett on behalf of Linnabary. Smith also recommended sustaining the protest against the Libertarian gubernatorial slate. The gubernatorial candidacies are the subject of federal litigation pending before Judge Michael Watson in the United States District Court for the Southern District of Ohio. *Libertarian Party of Ohio v. Husted*, S.D.Ohio No. 2:13-cv-953. On March 19, 2014, Judge Watson issued a decision denying a motion for a preliminary injunction. He held that R.C. 3501.38(E), the provision requiring

2

paid circulators of election petitions to disclose the name and address of "the person employing the circulator," did not violate the First Amendment or the due-process rights of the circulators.

{¶ 9} The same day that Smith issued his report, Husted issued a decision letter adopting Smith's conclusions. As a result of rejecting the part petitions circulated by Hatchett, Linnabary no longer had sufficient signatures to qualify for the primary ballot.

{¶ 10} On March 10, 2014, Linnabary filed suit in this court seeking a writ of mandamus to compel Secretary Husted to restore his name to the ballot. Secretary Husted filed an answer on March 17, 2014.

*Analysis*

*Felsoci's motion to intervene*

{¶ 11} Felsoci bases his request to intervene on *Blankenship v. Blackwell,* 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, a case in which this court permitted intervention in an expedited election case by the persons who filed the original protest. But *Blankenship* is distinguishable; Felsoci never filed a protest against Linnabary. He filed a protest against the Libertarian Party candidates for governor and lieutenant governor. Because he has no direct interest in this case, we deny his motion to intervene.

{¶ 12} Alternatively, Felsoci asks the court to accept his brief as an amicus brief. We find this appropriate. However, a person who is not entitled to intervene is also not entitled to submit evidence. *State ex rel. Citizen Action v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 23. For this reason, we disregard the affidavit of Brandon Lynaugh, submitted by Felsoci as evidence.

*The writ of mandamus*

{¶ 13} To prevail in this mandamus case, Linnabary must establish a clear legal right to the requested relief, a clear legal duty on the part of Secretary

Husted to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Linnabary must prove that he is entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13.

{¶ 14} Moreover, "[i]n extraordinary-writ actions challenging a decision of the secretary of state, the standard is whether the secretary engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable law." *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. There is no evidence of fraud or corruption here, so the dispositive issue is whether Husted abused his discretion or clearly disregarded applicable law by invalidating the petitions circulated by Hatchett for failure to comply with R.C. 3501.38(E)(1).

*Laches*

{¶ 15} Husted first argues that the court should reject Linnabary's mandamus petition based on laches. Laches may bar relief in an election-related matter if the person seeking relief fails to act with the requisite diligence. *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119.

{¶ 16} Husted appears to concede that Linnabary acted diligently by filing his complaint within three days of the secretary's decision to remove him from the ballot. Husted's theory is that the disclosure law in question has been on the books since 2005, so Linnabary had nearly a decade in which to seek a declaratory judgment or extraordinary writ. But Linnabary did not have a claim to assert until Husted removed his name from the ballot. We decline to dismiss on laches.

*Protestor standing*

{¶ 17} Paragraph 13 of R.C. 3513.05 states that a protest against a candidacy for party nomination may be filed "by any qualified elector who is a

4

member of the same political party as the candidate and who is eligible to vote at the primary election for the candidate whose declaration of candidacy the elector objects to." Linnabary asserts that Akers lacked standing before Secretary Husted to protest Linnabary's candidacy for the Libertarian Party nomination because Akers is not a member of the Libertarian Party.

**{¶ 18}** Husted borrows a definition of "member of the same political party" from paragraph 7 of R.C. 3513.05 to argue that Akers had the ability to file a protest against Linnabary. Husted alternatively argues that even if Akers did not meet the definition of "member of the same political party" under R.C. 3513.05 for purposes of filing his protest, R.C. 3501.39(A)(3) authorized Secretary Husted to remove Linnabary from the ballot upon discovering Hatchett's defective part petitions. R.C. 3501.39(A)(3) provides that the secretary of state or boards of elections shall accept any petition unless "(3) the candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law."

**{¶ 19}** Under the circumstances here, we agree with Husted that he had the authority under R.C. 3501.39 to investigate noncompliance by a petition circulator once he learned of it and to reject petitions for noncompliance. Therefore, we find that we need not decide whether Akers had standing to file the protest against Linnabary.

*Independent contractors and R.C. 3501.38(E)(1)*

**{¶ 20}** R.C. 3501.38 governs declarations of candidacy and nominating petitions. Subsection (E)(1) requires circulators to sign a statement making certain attestations and also states that on the nominating petition, "the circulator shall identify the circulator's name, the address of the circulator's permanent residence, and the name and address of the person employing the circulator to circulate the petition, if any." The dispute between the parties concerns the meaning of the word "employing."

**{¶ 21}** Linnabary asserts that "employing" connotes a strict employer-employee relationship. Therefore, an independent contractor, such as Hatchett, would have no employer to identify. Husted relies on the dictionary definition and everyday meaning of "employ" to argue that "employing" in R.C. 3501.38(E)(1) means "to hire," whether as an employee or independent contractor.

**{¶ 22}** We find that Secretary Husted has set forth a reasonable interpretation of R.C. 3501.38(E)(1) based on common usage of the term "employ." The " 'paramount concern in construing statutes is legislative intent,' " and "[t]o discern this intent, we must 'read words and phrases in context according to the rules of grammar and common usage.' " *Lucas Cty. Republican Party*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, at ¶ 14, quoting *State Farm Mut. Auto. Ins. Co. v. Grace*, 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 25, and *State ex rel. Mager v. State Teachers Retirement Sys. of Ohio*, 123 Ohio St.3d 195, 2009-Ohio-4908, 915 N.E.2d 320, ¶ 14. Husted asserts that the common meaning of "employ" covers more than the act of making someone an employee and that the statute therefore applies to all paid circulators, regardless of whether they are employees or independent contractors.

**{¶ 23}** Husted's interpretation of R.C. 3501.38(E)(1) is, at a minimum, reasonable and is therefore entitled to judicial deference. "[W]hen an election statute is subject to two different, but equally reasonable, interpretations, the interpretation of the Secretary of State, the state's chief election officer, is entitled to more weight." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 586, 651 N.E.2d 995 (1995); *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 57 ("The secretary of state's construction is reasonably supported by the pertinent provisions, and in accordance with well-settled precedent, the court must defer to that reasonable interpretation").

**{¶ 24}** To support his interpretation of R.C. 3501.38(E)(1), Linnabary primarily relies on *In re Protest of Evans*, 10th Dist. Franklin Nos. 06AP-539 through 06AP-548, 2006-Ohio-4690. The narrow issue in *Evans*, however, was whether the petition circulators had correctly identified which of two involved entities employed them for purposes of R.C. 3501.38(E)(1). In that case, the circulators listed the American Cancer Society, the group managing an initiative-petition effort, as the entity employing them. However, the American Cancer Society had hired a professional petition-circulating company, which had direct contact with the independent-contractor circulators and directed their day-to-day work. Under those facts, the court found that the American Cancer Society was not the person employing the circulators for purposes of R.C. 3501.38(E)(1) and accordingly affirmed the trial court's invalidation of the affected petitions.

**{¶ 25}** The *Evans* court did not specifically address the issue here: whether R.C. 3501.38(E)(1) requires a paid circulator who is an independent contractor to identify the "person employing" him or her. Thus, *Evans* is not dispositive of the issue here, and the opinion does not establish, as Linnabary argues, that "paid circulators need not disclose the fact they are paid" under R.C. 3501.38(E)(1).

**{¶ 26}** Linnabary also relies on *Rothenberg v. Husted*, 129 Ohio St.3d 447, 2011-Ohio-4003, 953 N.E.2d 327, which he interprets as standing for the proposition that circulators may disclose their payor "if they so choose (correctly or erroneously) without causing their part-petitions to be deemed invalid." Again, Linnabary overstates the case on which he relies. In regard to independent contractors as circulators, all we held was that petitions are not invalid "simply because the circulators, who might actually be independent contractors, listed the entity or individual engaging them to circulate the petition as 'the person employing them.' " *Id.* at ¶ 2.

**{¶ 27}** Because Linnabary has not established that Husted's interpretation of R.C. 3501.38(E)(1) clearly disregards applicable law, we reject the argument related to independent-contractor status.

*Avoidance of constitutional issues*

**{¶ 28}** Linnabary also argues that two constitutional concerns require this court to interpret R.C. 3501.38(E)(1) to cover employers but not independent contractors.

**{¶ 29}** Linnabary claims that under the doctrine of constitutional avoidance, this court should narrowly read R.C. 3501.38(E)(1) to avoid any First Amendment difficulty. We reject this argument for two reasons.

**{¶ 30}** First, even assuming that Linnabary's First Amendment concerns have some merit, it is unclear how they would be avoided by interpreting R.C. 3501.38(E)(1) to require only the disclosure of entities that pay circulators who are their employees but not the disclosure of entities that pay circulators who are independent contractors.

**{¶ 31}** Second, we are disinclined to find any First Amendment problem here. Last month, United States District Court Judge Watson denied a preliminary injunction in a related action after concluding that the Libertarian Party of Ohio was unlikely to prevail on a facial or as-applied First Amendment challenge to R.C. 3501.38(E)(1). *Libertarian Party of Ohio v. Husted*, S.D.Ohio No. 2:13-cv-953, Opinion and Order, 22, 24, 28 (Mar. 19, 2014). The federal court reviewed arguments and heard evidence on the issue and concluded that the statute would likely withstand the constitutional challenge because Ohio has a "significant interest in deterring and preventing fraud in the candidate petition process," the statute's disclosure requirements are "substantially related to" that interest, and the "disclosure requirements only minimally burden political speech." *Id.* at 21-22.

8

**{¶ 32}** Unlike the related federal action, this case does not squarely present a First Amendment challenge. Nevertheless, the district court's reasoning appears sound, and Linnabary presents no compelling reason why the First Amendment requires us to shorten the reach of R.C. 3501.38(E)(1) in the context of deciding whether to grant this writ.

**{¶ 33}** Linnabary also invokes the Due Process Clause, arguing that we would change existing law by interpreting R.C. 3501.38(E)(1) to require disclosure of entities that pay circulators who are independent contractors. He claims that he relied on prior interpretations of the statute, which he says did not require the completion of the disclosure lines on his part petitions, and argues that any new interpretation should not retroactively apply to him.

**{¶ 34}** As explained above, however, no prior case law—especially *Evans* and *Rothenberg*—adopted Linnabary's proposed interpretation of the statute. And Linnabary's citation of prior administrative directives issued by the Ohio secretary of state is likewise unhelpful. Secretary of State Directives Nos. 2006-58 (Aug. 21, 2006) and 2007-14 (Sept. 10, 2007). As the federal district court noted, these directives were "instructions to the local boards of election and do not purport to be the law of Ohio as it pertains to protest proceedings before the Secretary of State." *Libertarian Party of Ohio*, Opinion and Order, 26. In addition, "both Directives expired long before the events giving rise to this case took place." *Id.* As the district court observed, "The notion that independent contractors are exempt from the disclosure requirement appears to be little more than urban legend based on a misreading of *Rothenberg*." *Id.*, 25.

**{¶ 35}** We reject Linnabary's constitutional concerns as unfounded.

*The part petitions*

**{¶ 36}** As explained above, we defer to the secretary's reasonable interpretation that circulator Hatchett was required by R.C. 3501.38(E) to indicate the name and address of the person paying him to circulate the petition. The final

question is whether Secretary Husted reasonably concluded that this defect was sufficient to invalidate the part petitions circulated by Hatchett for Linnabary.

**{¶ 37}** Linnabary asserts that even if independent contractors are required to fill in the name and address of the entity paying them, leaving the line blank does not require the invalidation of the signatures on the part petitions.

**{¶ 38}** Linnabary first argues that two previous secretaries of state have issued directives that instruct boards of elections not to invalidate part petitions based on blank or incomplete employer information. Ohio Secretary of State Directive No. 2006-58 (Aug. 21, 2006) (issued by Secretary Blackwell in regard to the Smoke Less initiative petition); Directive No. 2007-14 (Sept. 10, 2007) (issued by Secretary Brunner in regard to a referendum petition on Sub.S.B. No. 16). However, these directives concerned referenda, not candidates, and were directed at the specific elections at issue. They were not general rules or directives to be applied to candidate petitions or to all elections. Indeed, Husted points out that a more recent directive holds the opposite. Directive No. 2013-17 (Sept. 3, 2013) ("If a circulator identifies an employer on the circulator's statement but does not provide a corresponding address, the Board *must invalidate the entire part petition*" [emphasis sic]).

**{¶ 39}** Linnabary also argues that R.C. 3513.261 requires that part petitions need only substantially comply with the rules. He bases this argument on *State ex rel. Osborn v. Fairfield Cty. Bd. of Elections*, 65 Ohio St.3d 194, 196, 602 N.E.2d 636 (1992), in which the court held that scratched-out and whited-out alterations to part petitions did not invalidate the part petitions.

**{¶ 40}** However, the court has long held that strict compliance is the default for election laws and that that standard is lowered only when the statutory provision at issue expressly states that it is. *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77–01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49. *Osborn* applied to a

statute expressly permitting substantial compliance, R.C. 3513.261, and that statute does not apply here.

{¶ 41} Although we have often interpreted statutes in favor of ballot access, *e.g., State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections,* 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 34 ("duty to liberally construe words limiting the right of a person to hold office in favor of those seeking to hold office so that the public may have the benefit of choice from all qualified persons"), Husted is correct in that R.C. 3501.38(E) does not include a substantial-compliance standard.

{¶ 42} Therefore, strict compliance is required.

*Conclusion*

{¶ 43} For the foregoing reasons, we deny the motion to intervene and deny the writ of mandamus.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

PFEIFER and KENNEDY, JJ., concur in judgment only.

_____

Mark G. Kafantaris and Mark R. Brown, for relator.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Stephen P. Carney, Deputy Solicitor, and Kristopher J. Armstrong, Assistant Attorney General, for respondent.

Zeiger, Tigges & Little, L.L.P., John W. Zeiger, Steven W. Tigges, Stuart G. Parsell, and Daniel P. Mead, urging denial of the writ for amicus curiae, Gregory Felsoci.

_____