[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.,* Slip Opinion No. 2018-Ohio-3220.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3220

OHIO RENAL ASSOCIATION ET AL. *v*. KIDNEY DIALYSIS PATIENT PROTECTION AMENDMENT COMMITTEE ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.,* Slip Opinion No. 2018-Ohio-3220.]

*Elections—Initiative-proposal petition—Challenge under Article II, Section 1g, Ohio Constitution—Petition-circulation managers were required to file disclosures under R.C. 3501.381(A)—It is a violation of R.C. 3501.381(A)(1) for a circulator to obtain signatures before that circulator's compensated manager has filed disclosures required by R.C. 3501.381(A) with secretary of state—Managers violated R.C. 3501.381(A)(1) by managing circulators who collected signatures before filing their R.C. 3501.381(A) disclosures—Challenge sustained.*

(No. 2018-1047—Submitted August 9, 2018—Decided August 13, 2018.)

CHALLENGE under Article II, Section 1g of the Ohio Constitution.

_____

**Per Curiam.**

{¶ 1} In this original action under Article II, Section 1g of the Ohio Constitution, relators, Ohio Renal Association and Ian Weir (collectively, "ORA"), challenge an initiative petition to place a proposed constitutional amendment—the "Kidney Dialysis Patient Protection Amendment"—on the November 6, 2018 ballot. The respondents in this case are the Kidney Dialysis Patient Protection Committee and its individual members, Anthony Caldwell, Mary Jo Ivan, and Samara Knight (collectively, "the committee"), and Ohio Secretary of State Jon Husted. Because ORA has shown that Ohio law requires invalidation of the petition, we sustain the challenge.

## I. CONSTITUTIONAL AND STATUTORY REQUIREMENTS

{¶ 2} To qualify its proposed amendment for the ballot, the committee must gather valid signatures from at least 10 percent of the number of electors who voted in the last gubernatorial election. Ohio Constitution, Article II, Section 1a; R.C. 3519.14 and 3519.22. According to Secretary Husted, this requires the committee to submit a minimum of 305,591 valid signatures in support of placing the measure on the ballot. Those signatures must be obtained from electors in at least 44 of Ohio's 88 counties, and the signatures obtained from each of those counties must equal at least 5 percent of the total votes cast in that county in the last gubernatorial election. Ohio Constitution, Article II, Section 1g.

{¶ 3} To facilitate the review of the signatures obtained, R.C. 3519.10 provides that each filed part-petition "shall contain signatures of electors of only one county." Once a petition is filed, the secretary of state must separate the part-petitions by county and transmit them to the appropriate county boards of elections to determine the number of valid elector signatures on each part-petition. R.C. 3519.15; *see also* R.C. 3501.11(K)(1) (requiring boards to "[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers, and, after

certification, return to the secretary of state all petitions and nomination papers that the secretary of state forwarded to the board").

{¶ 4} ORA first contends that we must invalidate the committee's petition because, it argues, several circulation managers failed to comply with R.C. 3501.381(A). That statute provides:

> (1) Any person who will receive compensation for supervising, managing, or otherwise organizing any effort to obtain signatures * * * for a statewide initiative petition * * * shall file a statement to that effect with the office of the secretary of state before any signatures are obtained for the petition or before the person is engaged to supervise, manage, or otherwise organize the effort to obtain signatures for the petition, whichever is later.

> (2) Any person who will compensate a person for supervising, managing, or otherwise organizing any effort to obtain signatures * * * for a statewide initiative * * * petition shall file a statement to that effect with the office of the secretary of state before any signatures are obtained for the petition or before the person engages a person to supervise, manage, or otherwise organize the effort to obtain signatures for the petition, whichever is later.

R.C. 3501.381(A). Pursuant to R.C. 3501.381(B), the secretary of state has prescribed a one-page form—"Form 15"—for the disclosure of the information required by division (A). Any person violating division (A) is guilty of a first-degree misdemeanor, and if division (A) is violated, "the petition for which a person was compensated for supervising, managing, or otherwise organizing the effort to obtain signatures shall be deemed invalid." R.C. 3501.381(C).

**{¶ 5}** In the alternative, ORA argues that the summary of the part-petitions, which the committee filed pursuant to R.C. 3519.16(B)(2), did not comply with that statute's requirements.

## II. FACTS AND EVIDENCE

**{¶ 6}** On July 4, 2018, the committee filed with Secretary Husted an initiative petition that proposes to add its amendment as Article XIX, Section 1 of the Ohio Constitution. After the county elections boards reviewed the part-petitions, Secretary Husted, on July 23, certified that the petition contained 296,080 valid signatures—9,511 short of the total number needed for the petition to be placed on the November 8 ballot. Secretary Husted certified that the petition met the 5 percent minimum threshold for 48 counties. As required by R.C. 3519.16(F), Secretary Husted gave the committee ten days to circulate and file a supplemental petition to cure the deficiency. On August 1, the committee filed a supplemental petition containing an additional 41,122 signatures. Secretary Husted sent the supplemental part-petitions to the affected county boards of elections for review. *See* R.C. 3519.16(F) (requiring county elections boards to "immediately examine[] and pass[] upon * * * the validity and sufficiency of the signatures on" the part-petitions of supplemental petitions and to report to the secretary of state within eight days).

**{¶ 7}** ORA does not allege that any person required to file a disclosure under R.C. 3501.381(A) ultimately failed to do so. But it claims that four individuals and two companies (collectively, "the managers") failed to file a Form 15 *before* circulators under their supervision obtained signatures for the petition. ORA alleges that circulators being supervised by the managers collected 145 part-petitions before an appropriate Form 15 had been filed.

4

### III. ANALYSIS

#### A. Standards for review

{¶ 8} In this petition challenge, ORA has the burden of demonstrating by a preponderance of the evidence that the committee's petition does not meet the requirements of Ohio law. S.Ct.Prac.R. 14.01(B). In deciding the challenge, we are guided by several rules of construction. We must "liberally construe" the people's initiative power "to effectuate the rights reserved" in the Ohio Constitution. *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 24. And we "must avoid unduly technical interpretations that impede the public policy favoring free, competitive elections." *State ex rel. Ruehlmann v. Luken*, 65 Ohio St.3d 1, 3, 598 N.E.2d 1149 (1992). But when an election law is clear, "the settled rule is that [it is] mandatory and require[s] strict compliance." *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 535, 539, 757 N.E.2d 319 (2001). Substantial compliance is acceptable only when an election provision expressly states that it is. *Id.*

#### B. ORA's challenge is ripe for review

{¶ 9} As an initial matter, the committee argues that we cannot reach the merits of ORA's challenge because it is not yet ripe. According to the committee, ORA's challenge depends on the certification of the petition for the ballot, and certification depends on the occurrence of a future contingency—i.e., the secretary of state's certification of sufficient valid signatures on the supplemental petition. The committee relies on *State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E.3d 463, ¶ 21 (plurality opinion), and *State ex rel. Quinn v. Delaware Cty. Bd. of Elections*, 152 Ohio St.3d 568, 2018-Ohio-966, 99 N.E.3d 362, ¶ 37, in which we recognized that a claim is not ripe "if it rests on contingent events that may never occur at all."

{¶ 10} The language of Article II, Section 1g of the Ohio Constitution does not support the committee's argument that a petition may be challenged in this court

only after it has been certified for the ballot by the secretary of state. Section 1g contemplates a process during which both the secretary of state and this court may be called on to determine the sufficiency of a petition. Once a petition is filed, the secretary of state first must "determine the sufficiency of the signatures" at least 105 days before the election. Ohio Constitution, Article II, Section 1g (first paragraph). If a party seeks to bring a "challenge to a petition or signature on a petition," it must file an action in this court at least 95 days before the election. *Id.* (second paragraph). "If the petitions or signatures are determined to be insufficient"—by either the secretary of state or this court—"ten additional days shall be allowed for the filing of additional signatures to such petition." *Id.* (third paragraph). Then, if additional signatures are filed, the secretary of state must "determine the sufficiency of those additional signatures" at least 65 days before the election, and any challenge "to the additional signatures" shall be filed in this court at least 55 days before the election. *Id.*

{¶ 11} This year, the initial deadline for filing an action in this court was August 3 (95 days before the election). Although a later action could be filed on or before September 12 (55 days before the election), under Section 1g, any later action would be limited to challenging "the additional signatures" filed. *Id.* Thus, under the timeline imposed by Section 1g, to challenge the committee's *original* filing, ORA had no choice but to file its action before Secretary Husted certified the petition for the ballot.

{¶ 12} This case, like *Jones* and *Quinn*, involves the possibility of a contingent future event. But the nature of the contingency is different here. In *Jones* and *Quinn*, the claims would become *necessary* only if a future event occurred. Therefore, they were not ripe. *See State v. Loving*, 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 4 (10th Dist.) (a case is not yet ripe "if it rests on contingent future events that may not occur as anticipated or may never occur at all"), citing *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

6

Here, in contrast, the challenge will become *unnecessary* if a future event occurs—that is, if the committee fails to cure the deficiency. Thus, the committee's concern is not actually one of ripeness but one of potential mootness. *See State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 10 (a case becomes moot when an event occurs that renders it impossible for the court to grant the requested relief; under such circumstances, there is no longer a "live" issue that demands resolution). Because ORA's challenge is ripe and currently not moot, we address it on the merits.

### C. R.C. 3501.381 requires invalidation of the petition

*1. R.C. 3501.381(A) applies to the managers*

{¶ 13} R.C. 3501.381(A)(1) and (A)(2) apply to different classes of persons involved in an effort to obtain signatures for an election petition. While R.C. 3501.381(A)(1) requires a disclosure from a person who "will *receive compensation* for supervising, managing, or otherwise organizing any effort to obtain signatures," R.C. 3501.381(A)(2) requires a person who "*will compensate* a person for supervising, managing, or otherwise organizing any effort to obtain signatures" to file a disclosure. (Emphasis added.) Evidence shows that the managers filed Form 15s pursuant to R.C. 3501.381(A)(1) and (A)(2).

{¶ 14} But the committee suggests that ORA has not shown that the managers even were required to file the disclosures. According to the committee, if the managers did not need to file Form 15s, there can be no violation of R.C. 3501.381(A).

{¶ 15} In arguing that ORA has not presented sufficient evidence in support of its claim under R.C. 3501.381(A), the committee focuses on the phrase "for supervising, managing, or otherwise organizing any effort to obtain signatures," which is used in both R.C. 3501.381(A)(1) and (A)(2). The committee argues that this language narrows the applicability of the disclosure requirement to a select class of persons that may not include the managers.

{¶ 16} We need not address whether the managers were required to file Form 15s under R.C. 3501.381(A)(2), because sufficient evidence shows that they were required to file the disclosures under R.C. 3501.381(A)(1). Indeed, the committee's own evidence shows that the managers oversaw circulators who collected signatures and that the managers would "receive compensation for supervising, managing, or otherwise organizing any effort to obtain signatures." Thus, contrary to the committee's argument, sufficient evidence supports the conclusion that the managers were required to file disclosures under R.C. 3501.381(A).

*2. R.C. 3501.381(A) prohibits signature collection before an applicable disclosure form has been filed*

{¶ 17} R.C. 3501.381(A)(1) provides that any person required to file a disclosure must do so "before any signatures are obtained for the petition or before the person is engaged to supervise, manage, or otherwise organize the effort to obtain signatures for the petition, whichever is later." ORA argues that the managers violated this rule, because circulators under their supervision collected signatures before the managers' Form 15s had been filed with Secretary Husted. Indeed, ORA has presented as evidence the Form 15s filed by each of the managers and numerous part-petitions that were circulated under the supervision of the managers and signed by electors before the respective Form 15s were filed.

{¶ 18} The committee does not dispute that R.C. 3501.381(A)(1) prohibits the collection of signatures by a circulator before that circulator's compensated manager has filed a Form 15. And although Secretary Husted presents a contrary argument, it is unclear and not supported by the statutory language.

{¶ 19} Secretary Husted argues that ORA has not presented sufficient evidence to prove a violation, because no evidence shows that the managers were paid or engaged to supervise, manage, or organize an effort to collect signatures before they filed the Form 15s. Secretary Husted seems to suggest that there can

be no violation of R.C. 3501.381(A) unless a manager is shown to have received compensation before a circulator under his management collected signatures. R.C. 3501.381(A)(1) does not support that interpretation, because it clearly applies not to a person who *has been* paid but to one who "will receive compensation."

{¶ 20} Secretary Husted also argues that there can be no violation of R.C. 3501.381(A) unless the manager is shown to have been engaged before a circulator under his management collected signatures. Here, he posits that circulators may have collected signatures under the supervision of the managers when the managers were acting as volunteers on behalf of the committee. This conjecture is undermined by the committee's evidence, which clearly shows that the signature-gathering effort was organized and managed by for-profit companies and individuals.

{¶ 21} We therefore reject Secretary Husted's arguments and conclude that it is a violation of R.C. 3501.381(A)(1) for a circulator to obtain signatures before that circulator's compensated manager has filed a Form 15 with the secretary of state. We further find that ORA has presented sufficient evidence showing that the managers violated R.C. 3501.381(A)(1) by managing circulators who collected signatures before filing their Form 15s.

*3. Because R.C. 3501.381(A) was violated, we must invalidate the petition*

{¶ 22} R.C. 3501.381(C) provides that if division (A) is violated, "the petition for which a person was compensated for supervising, managing, or otherwise organizing the effort to obtain signatures shall be deemed invalid." ORA argues that this provision requires us to invalidate the committee's entire petition— not just the affected part-petitions.

{¶ 23} "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the

syllabus. The committee argues that R.C. 3501.381(C)'s reference to "the petition" is ambiguous and that we must apply rules of construction. ORA, in contrast, argues that division (C) is clear and that we must simply apply it by invalidating the committee's entire petition.

**{¶ 24}** We agree with ORA. R.C. 3501.381(C) plainly requires the invalidation of the singular "petition"—a clear reference to the entire petition rather than to separate part-petitions. As ORA points out, in other statutory provisions, the General Assembly has distinguished between a "petition" and the individual "part-petitions" or "petition papers" that constitute a petition. *See* R.C. 307.94, 709.45, 3513.09, 3513.262, 3517.011, 3519.15, and 3519.16. When, as here, statutory language is clear and has a definite meaning, we may not resort to rules of statutory interpretation; we must simply apply the unambiguous statute as written. *Sears* at paragraph five of the syllabus. That rule applies with particular force in this election case, in which "strict compliance" with the law is required unless the statutory provision at issue expressly states that substantial compliance is acceptable, *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 40.

**{¶ 25}** Therefore, because ORA has demonstrated violations of R.C. 3501.381(A)(1), we must sustain the challenge and invalidate the committee's petition.

### D. The committee's constitutional arguments

**{¶ 26}** The committee claims that R.C. 3501.381, facially and as we apply it today, violates Article II, Sections 1a and 1g of the Ohio Constitution and the First Amendment to the United States Constitution.[1] As we evaluate the

---

[1] On August 7, Secretary Husted moved for leave to file a surreply brief in response to the committee's argument that R.C. 3501.381 is unconstitutional. Secretary Husted attached his proposed surreply brief to his motion. Because the committee filed a response indicating that it does not oppose Secretary Husted's request, and considering Secretary Husted's interest in defending the constitutionality of Ohio's laws, we grant the motion.

committee's claims, we must bear in mind that "laws are entitled to a strong presumption of constitutionality." *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. A party asserting a facial challenge to a statute must prove beyond a reasonable doubt "that no set of circumstances exists under which the act would be valid." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21, citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). An as-applied challenge requires the challenger to "present clear and convincing evidence of the statute's constitutional defect." *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21. In this case, the committee has not met its burden as to any of its constitutional challenges.

**E. We need not address ORA's claim under R.C. 3519.16(B)(2)**

**{¶ 27}** Because we hold that the committee's petition is invalid under R.C. 3501.381(A), we need not consider ORA's alternative request for relief under R.C. 3519.16(B)(2).

Challenge sustained.

O'CONNOR, C.J., and O'DONNELL, FRENCH, and DEGENARO, JJ., concur.

KENNEDY, FISCHER, and DEWINE, JJ., concur in judgment only.

––––––––––––––––––

Bricker & Eckler, L.L.P., Anne Marie Sferra, Maria J. Armstrong, Nelson M. Reid, and James P. Schuck, for relators.

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for respondents Kidney Dialysis Patient Protection Amendment Committee, Anthony Caldwell, Mary Jo Ivan, and Samara Knight.

Michael DeWine, Attorney General, and Tiffany L. Carwile and Ann Yackshaw, Assistant Attorneys General, for respondent Ohio Secretary of State Jon Husted.

_____