[Cite as *Colosseo USA, Inc. v. Univ. of Cincinnati*, 2019-Ohio-2026.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| COLOSSEO USA, INC., | : | APPEAL NO. C-180223 |
| | | TRIAL NO. A-1703142 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| UNIVERSITY OF CINCINNATI, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 24, 2019

*Stites & Harbison PLLC*, *William G. Geisen* and *Andrew J. Poltorak*, for Plaintiff-Appellant,

*Brickler & Eckler LLP*, *Jeffrey P. McSherry* and *Mark E. Evans*, for Defendant-Appellee.

**MYERS, Presiding Judge.**

{¶1} Colosseo, USA, Inc., ("Colosseo") appeals the trial court's judgment granting the motion of the University of Cincinnati ("UC") to dismiss for lack of subject-matter jurisdiction Colosseo's claims for a declaratory judgment stemming from UC's award of a contract for the replacement of a video scoreboard at UC's Nippert Stadium to another bidder, and for other future projects.

*Background*

{¶2} In February 2017, UC issued a Request for Proposal ("RFP") that sought proposals from vendors for an integrated videoboard and digital signage system for six of UC's athletic facilities, including Nippert Stadium, Fifth Third Arena, Schott Stadium, Gettler Stadium, Keating Natatorium, and Sheakley Athletic Center. The RFP made clear that awards for each of the facilities would be made separately as funding became available.

{¶3} Four vendors submitted responses to the RFP. On April 11, 2017, UC notified two of them, Colosseo and Daktronics, Inc., that they were the vendors under primary consideration and that UC would contact each of them to schedule a final interview.

{¶4} Before the final interview, UC notified Colosseo and Daktronics that the interview would be focused solely on the replacement of the scoreboard for Nippert Stadium. Then UC asked them to submit supplemental proposals limited to that scoreboard.

{¶5} Colosseo and Daktronics submitted supplemental proposals for only the replacement of the Nippert Stadium scoreboard. After reviewing both proposals, UC's outside consultant and UC's review committee recommended that the contract for the Nippert Stadium scoreboard project be awarded to Daktronics.

{¶6} On May 11, 2017, UC advised Colosseo and Daktronics that the contract for the replacement of the Nippert Stadium scoreboard was awarded to Daktronics. UC informed Colosseo that, even though it did not win the award for Nippert Stadium, Colosseo was selected as one of two firms qualified to bid on the remaining projects.

{¶7} Accordingly, UC issued a term contract that identified Colosseo and Daktronics as approved vendors who were qualified to participate in the replacement of scoreboards for the facilities identified in the RFP. The term contract specified that each of the athletic-facility projects would "be individually bid, scored, and awarded." The contract stated that it was not an "exclusive" commitment, and contemplated the possibility of "multiple awards." In addition, the contract specified that "[c]ontractors may be added and assignments may be changed."

{¶8} On May 12, 2017, UC issued a purchase order to Daktronics for the Nippert Stadium scoreboard replacement, requiring installation to be completed by the end of August 2017, the date of the first home game for UC's football team.

{¶9} On June 12, 2017, Colosseo filed a complaint for a temporary restraining order, preliminary injunction, and permanent injunction to enjoin UC from proceeding on the Nippert Stadium scoreboard replacement project and on any other work related to the RFP. In addition, Colosseo sought a declaratory judgment that the Nippert Stadium contract with Daktronics was void because in awarding the contract to Daktronics, UC had violated Ohio's competitive-bidding laws, UC's competitive-bidding rules established by its board of trustees, and the standards set forth in the RFP. It argued that it was the lowest and best bidder for both the Nippert Stadium contract and for the contract awarded under the RFP, and that the contract for the RFP should be awarded solely to Colosseo.

{¶10} Simultaneously, Colosseo moved for a temporary restraining order and a preliminary injunction to enjoin UC from continuing work related to the Nippert

Stadium scoreboard project. UC responded that the contract for the procurement of the scoreboard involved the purchase of goods and services and was not a public-improvement contract subject to competitive-bidding laws and rules.

{¶11} Following a hearing on June 16, 2017, the trial court denied Colosseo's motion for a temporary restraining order and a preliminary injunction. The court reasoned that Colosseo was unlikely to succeed on the merits because the contract for the Nippert Stadium project was a goods and services contract not subject to competitive-bidding laws and rules. In addition, the court found that Colosseo had not demonstrated that it would suffer irreparable harm if the requested relief was denied because it was still an approved vendor for the other five projects. The court also found that any injury suffered by Colosseo would not outweigh the potential harm to UC, and that the public interest would not be served by an award of injunctive relief. Colosseo did not appeal the denial of its motion for a temporary restraining order and a preliminary injunction.

{¶12} In mid-July 2017, UC filed an answer, a motion to stay discovery, and a motion for judgment on the pleadings. After an August hearing, the trial court issued a written decision in September denying both motions.

{¶13} The case progressed and the parties proceeded with written discovery. In January 2018, UC filed a motion to dismiss for lack of subject-matter jurisdiction, or, in the alternative, for reconsideration of its earlier motion for judgment on the pleadings, arguing that the Nippert Stadium scoreboard replacement was now complete and contracts for the remaining projects had not yet been awarded.

{¶14} The trial court granted UC's motion and dismissed the action. The court determined that, with respect to the Nippert Stadium scoreboard replacement project, no further controversy existed for the court to decide, and no meaningful relief could be granted to Colosseo. The court dismissed Colosseo's claims relating to the remaining athletic facilities for lack of subject-matter jurisdiction, concluding

that they were not ripe for review and that no justiciable controversy existed. Colosseo appeals the trial court's judgment.

### 1. Dismissal of the Action

{¶15} In its first assignment of error, Colosseo argues that the trial court erred by granting UC's motion to dismiss for lack of subject-matter jurisdiction.

{¶16} Where a trial court has resolved a declaratory-judgment action by determining that no justiciable controversy exists, we review the determination for an abuse of discretion. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13; *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 17 (1st Dist.). Reversal is therefore warranted only if the trial court's decision regarding justiciability was unreasonable, arbitrary, or unconscionable. *Waldman* at ¶ 17. A decision is unreasonable where it is not supported by a sound reasoning process. *Id.*

{¶17} A common pleas court's subject-matter jurisdiction is constitutionally limited to "justiciable matters." Ohio Constitution, Article IV, Section 4(B). A justiciable matter exists for purposes of a declaratory-judgment action where a real controversy exists between adverse parties and speedy relief is necessary to preserve the parties' rights. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 49. A declaratory-judgment action does not authorize a court to render an advisory opinion. *See Arnott* at ¶ 10, quoting *Mid-American Fire & Cas. Co. v. Healey*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶18} To be justiciable, the danger or dilemma to a party's position must be present, and not merely possible or remote. *Arnott* at ¶ 10. The controversy must be ripe for judicial review, so it "cannot be dependent on the occurrence or nonoccurrence of future events." *William Powell Co. v. Onebeacon Ins. Co.*, 2016-Ohio-8124, 75 N.E.3d 909, ¶ 47 (1st Dist.); *Keller v. Columbus*, 100 Ohio St.3d 192,

2003-Ohio-5599, 797 N.E.2d 964, ¶ 26. A case is not yet ripe if "it rests on contingent future events that may not occur as anticipated or may never occur at all." *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Comm.*, 154 Ohio St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, ¶ 12, citing *State v. Loving*, 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234 (10th Dist.).

{¶19} It is well settled that a court's role is to "decide actual controversies by a judgment which can be carried into effect." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 12, quoting *Miner v. Witt*, 82 Ohio St. 237, 238, 92 N.E. 21 (1910). A case becomes moot when an event occurs that renders it impossible for the court to grant the requested relief; "under such circumstances, there is no longer a 'live' issue that demands resolution." *Ohio Renal Assn.* at ¶ 12, citing *State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 11. "In a construction-related case, if an unsuccessful bidder seeking to enjoin the construction of a public-works project fails to obtain a stay of the construction pending judicial resolution of its claims challenging the decision, and construction commences, the unsuccessful bidder's action will be dismissed as moot." *Gaylor* at ¶ 11.

### A. Nippert Stadium

{¶20} After the trial court denied Colosseo's request for a temporary restraining order and a preliminary injunction, Colosseo did not appeal the denial of its motion for injunctive relief.[1] And UC moved forward on the Nippert Stadium project. When UC filed its January 2018 motion to dismiss for lack of subject-matter jurisdiction or, in the alternative, for reconsideration of its motion for judgment on the pleadings, UC had completed the Nippert Stadium project.

---

[1] We make no determination as to whether the trial court's order was immediately appealable. Rather, we point out that as a factual matter, no appeal was taken.

{¶21} Ohio law is clear that the only remedy generally available to a rejected bidder under a public contract situation is injunctive relief. *Cementech, Inc. v. Fairlawn*, 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, ¶ 10. This is because the rejected bidder cannot recover lost profits as damages. *Id.* at ¶ 14.

{¶22} In some circumstances, the rejected bidder may, however, be able to recover reasonable bid-preparation costs in the Court of Claims, which has exclusive, original jurisdiction over civil suits seeking money damages against the state even where injunctive or declaratory relief is also sought. *See Meccon, Inc. v. Univ. of Akron*, 126 Ohio St.3d 231, 2010-Ohio-3297, 933 N.E.2d 231, ¶ 18-19. To recover its bid-preparation costs, the rejected bidder must establish that a public authority violated state competitive-bidding laws in awarding a public-improvement contract, and that the bidder promptly sought, but was denied, injunctive relief and it is later determined that the bidder was wrongfully rejected and injunctive relief is no longer available. *Id.* at ¶ 13.

{¶23} But, once a rejected bidder's request for preliminary injunctive relief has been denied and work begins on a public-improvement project, "the rejected bidder will not be able to perform the public contract even if the bidder demonstrates that its bid was wrongfully rejected." *Id.* at ¶ 12, citing *Cementech* at ¶ 13. In those circumstances, "the wrongfully rejected bidder is left with no remedy for the public authority's unlawful conduct, and injunctive relief will no longer serve to deter the public authority's unlawful conduct." *Id.* at ¶ 13.

{¶24} In this case, therefore, even if UC violated state competitive-bidding laws in awarding the Nippert Stadium scoreboard contract, once Colosseo's request for injunctive relief was denied and the work on the project commenced or was completed, there was no longer any remedy or injunctive relief that the trial court could have awarded to Colosseo. Accordingly, we hold that the trial court did not abuse its discretion in determining that there was no further controversy to decide

and no meaningful relief that the court could have granted to Colosseo with respect to the Nippert Stadium project.

### B. The Remaining Athletic Facilities

{¶25} The RFP made clear that awards for each of the athletic facilities would be made separately as funding became available. Because a declaratory judgment as to the remaining facilities was contingent upon the occurrence of future events, i.e., the securing of funding for each award for each facility, the actual award of the work, and the possibility of future agreements, the action was not ripe for judicial review.

{¶26} Accordingly, we hold that the trial court did not abuse its discretion in determining that no justiciable controversy yet existed as to the remaining projects. Therefore, the trial court did not err by dismissing the action. We overrule the first assignment of error.

### 2. Reconsideration of Trial Court's Earlier Ruling

{¶27} In its second assignment of error, Colosseo argues that the trial court erred to the extent that it reconsidered or modified its earlier decision denying UC's motion for judgment on the pleadings. The denial of the original motion for judgment on the pleadings was a not a final order,[2] so the trial court retained jurisdiction to reconsider its earlier ruling. *See Othman v. Bd. of Edn.*, 1st Dist. Hamilton Nos. C-160878 and C-170187, 2017-Ohio-9115, ¶ 12. We overrule the second assignment of error.

---

[2] Generally, the denial of a motion for judgment on the pleadings is not a final, appealable order. *See Buchanan v. Ohio Dept. of Rehab. and Corr.*, 10th Dist. Franklin No. 18AP-970, 2019-Ohio-1423, ¶ 8; *Steinbrink v. Greenon Local School Dist.*, 2d Dist. Clark No. 11CA0050, 2012-Ohio-1438, ¶ 16. An exception exists if the denial is based on political-subdivision immunity. *See Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 14.

*Conclusion*

**{¶28}** Having overruled both assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.