[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Combs v. Greene Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-4110.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4110

THE STATE EX REL. COMBS *v*. GREENE COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Combs v. Greene Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-4110.]**

*Elections—Mandamus—Writ of mandamus sought to compel board of elections to verify signatures on relator's nominating petition to be candidate for township trustee—R.C. 3501.38(E)(1)—A circulator of a part-petition must indicate the number of signatures contained on that part-petition—Writ denied.*

(No. 2019-1234—Submitted October 2, 2019—Decided October 4, 2019.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, L. Stephen Combs, seeks a writ of mandamus ordering respondent, the Greene County Board of Elections, to count the signatures on his petition and certify his name to the November 5, 2019 general-election ballot as a candidate for Xenia Township Trustee.  We deny the writ.

## I. BACKGROUND

**{¶ 2}** Combs submitted his nominating petition on August 6, 2019. It consisted of three part-petitions. The first had 13 signatures, the second had 11 signatures, and the third had 20 signatures. At the bottom of each part-petition, Combs signed a declaration, "under penalty of election falsification," that included the statement, "I am the circulator of the foregoing petition containing 44 signatures."

**{¶ 3}** At its August 19 meeting, the board rejected Combs's petition because the circulator statement on each part-petition indicated 44 signatures—the total number on the entire petition—rather than the number of signatures on the individual part-petition. Because it rejected the petition on this basis, the board did not complete its verification of the signatures.

**{¶ 4}** Combs requested an expedited reconsideration hearing. In an affidavit, Combs avers that he received no notice of a hearing but that an unnamed representative of the board told him on September 3 that the expedited hearing had already taken place and that his petition had been denied. The board denies that a hearing occurred. The minutes of its August 27 meeting reflect that the board was informed of Combs's reconsideration request, that the board's legal counsel advised that it could hold a hearing but was not required to, that the board chair observed that it had not been the board's practice to hold reconsideration hearings in such circumstances, and that the topic died for lack of a motion. The board's deputy director avers in an affidavit that the minutes are accurate and that no hearing on Combs's request for reconsideration took place.

**{¶ 5}** On September 6, Combs filed his complaint seeking a writ of mandamus ordering the board to verify the signatures on his petition and to certify his name to the November 5 ballot.

## II.  ANALYSIS

### A.  *Mandamus Standard*

{¶ 6} Combs is entitled to a writ of mandamus if he establishes by clear and convincing evidence that (1) he has a clear legal right to have his petition signatures verified and, if they are sufficient, have his name placed on the ballot, (2) the board has a clear legal duty to verify the signatures and place his name on the ballot, and (3) he lacks an adequate remedy in the ordinary course of the law.  *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 12.  Because of the proximity of the election, Combs lacks an adequate remedy outside this proceeding.  *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

### B.  *Indication of the Number of Signatures on Each Petition Paper*

{¶ 7} Combs argues that he has a clear legal right to have his petition signatures verified and his name placed on the November ballot and that the board has a clear legal duty to verify the signatures and place his name on the ballot.  We disagree.

{¶ 8} R.C. 3501.38(E)(1) provides, "On each *petition paper*, the circulator *shall* indicate the number of signatures contained on it * * *."  (Emphasis added.) "Petition paper" means "part-petition," not the petition as a whole.  *Ohio Renal Assn. v. Kidney Dialysis Patient Protection Amendment Commt.*, 154 Ohio St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, ¶ 24 ("the General Assembly has distinguished between a 'petition' and the individual 'part-petitions' or 'petition papers' that constitute a petition").  And "R.C. 3501.38(E) demands strict compliance."  *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 49.  Combs did not strictly comply with R.C. 3501.38(E)(1), because he did not, on each petition paper, indicate the number of signatures the petition paper contained.

*1. Statutory Interpretation and Strict Compliance*

**{¶ 9}** Combs raises two arguments regarding the interpretation of and strict compliance with R.C. 3501.38(E)(1). These arguments are without merit.

**{¶ 10}** Combs first argues that he actually complied with R.C. 3501.38, because the statute reads: "All * * * nominating petitions * * * shall * * * be governed by the following rules: * * * (E)(1) On each petition paper, the circulator shall indicate the number of signatures contained on it." Combs posits that by "it," the statute means the nominating petition.

**{¶ 11}** The interpretation Combs seeks is contrary to a plain reading of the statute. To accept Combs's reading would require that we set aside the ordinary rules of grammar and apply the singular "it" to the plural "nominating petitions" and overlook the proximate phrase "each petition paper" in favor of the phrase "nominating petitions," which appears at the very start of R.C. 3501.38. The construction he advocates is also at odds with other parts of the statutory scheme. There is no statutory requirement that a petition be circulated by a single circulator, and it is common for more than one person to circulate the separate parts of a petition. Requiring each of those individual circulators to state the total number of signatures on the entire petition, including signatures that the circulator did not witness, would be inconsistent with the form of the circulator statement set forth in R.C. 3513.261. And it would be counter to the state's interest in deterring and preventing fraud, *see State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 31.

**{¶ 12}** Combs also argues that only substantial, not strict, compliance with R.C. 3501.38(E)(1) is required, citing R.C. 3513.261. But R.C. 3513.261 merely provides that a nominating petition must be substantially in the form provided in the statute; it does not change the fact that candidates are required to strictly comply with R.C. 3501.38(E)(1). *State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, ¶ 26 (R.C. 3513.261 "requires

4

only substantial compliance with the prescribed 'form' of the nominating petition" but "contains no language regarding substantial compliance as to other matters").

### 2. Secretary of State Form No. 3-R

{¶ 13} Combs argues that he has a clear legal right to relief because, he claims, he complied with the secretary of state's Form No. 3-R, which is a form created by the secretary that may be circulated to obtain electors' signatures for a candidate for township office. Form No. 3-R contains a statement requiring the circulator to declare, under penalty of election falsification:

> I am the circulator of the foregoing petition containing [number of] signatures; * * * I witnessed the affixing of every signature; * * * all signers were to the best of my knowledge and belief qualified to sign; and * * * every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be * * *.

Citing *State ex rel. Crowl v. Delaware Cty. Bd. of Elections*, 144 Ohio St.3d 346, 2015-Ohio-4097, 43 N.E.3d 406, ¶ 10, Combs argues that because this declaration uses the word *petition*—not *part-petition* or *petition paper*—the secretary of state has interpreted R.C. 3501.38(E)(1) to require the circulator to state the number of signatures on the full petition, not the number on the part-petition, and that we should defer to the secretary's interpretation.

{¶ 14} As explained above, however, Combs's interpretation would not make sense in any situation in which there is more than one circulator: each individual circulator would be unable to make the required declaration because he would not have witnessed the signatures on the part-petitions that he did not circulate. In addition, Combs overlooks the fact that Form No. 3-R's declaration refers to the number of signatures on the *foregoing* petition. Combs's three

declarations—coming at the end of his three part-petitions—cannot all logically refer to 44 *foregoing* signatures. It is therefore unlikely that the secretary has interpreted R.C. 3501.38(E)(1) as Combs suggests. Moreover, "when an election law is clear, 'the settled rule is that [it is] mandatory and require[s] strict compliance.' " (Brackets sic.) *Ohio Renal Assn.*, 154 Ohio St.3d 86, 2018-Ohio-3220, 111 N.E.3d 1139, at ¶ 8, quoting *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 535, 539, 757 N.E.2d 319 (2001). Since R.C. 3501.38(E)(1) is clear, no interpretation is warranted, and the question of deference is moot. The secretary lacks the authority to *change* the statute's requirements.

### 3. Lack of Fraud

{¶ 15} Combs next argues that he has a clear legal right to relief because he committed no fraud, citing *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act*, 149 Ohio St.3d 250, 2016-Ohio-5377, 74 N.E.3d 399, ¶ 44 ("*OMA*"). In *OMA*, we noted that "[t]he requirement that a circulator state the number of signatures personally witnessed 'is a protection against signatures being added later.' " *Id*., quoting *State ex rel. Loss v. Lucas Cty. Bd. of Elections*, 29 Ohio St.2d 233, 234, 281 N.E.2d 186 (1972) (invalidating a part-petition because the line indicating the total number of signatures witnessed was left blank). We then stated, "We are not dealing here with a case of minor or negligent miscounts. Systemic overcounts of the magnitude seen in this case are an open invitation to fraud and make this case different from all previous cases cited by the parties." *Id*.

{¶ 16} However, this case does not present an "overcount" in the sense that that word was used in *OMA*. Combs wrote on each part-petition that there were "44" signatures. But each part-petition contains only 20 numbered signature lines and could therefore contain a maximum of 20 signatures. Combs did not attempt to do what the statute required (write on each part-petition the number of signatures witnessed on that part-petition) and then negligently execute that task by miscounting the signatures—he misinterpreted R.C. 3501.38(E)(1) and thus did

something other than what it required. And we have never held that the absence of fraud is an excuse for not complying with a statute's strict requirements.

{¶ 17} In this mandamus action, Combs's burden is to show by clear and convincing evidence that he has a clear legal right to the relief he seeks. Combs suggests that writing on each part-petition the total number of signatures on the entire petition was sufficient to accomplish R.C. 3501.38(E)(1)'s goal of preventing fraud. But even assuming that is true, he fails to explain how meeting what he perceives to be the statute's goal in a way other than the one expressly set forth by the legislature translates into a *clear legal right* to have his name certified to the ballot.

### 4. Reconsideration Hearing

{¶ 18} Combs asserts that the board held a hearing on his request for reconsideration, and he argues that the board violated a legal duty by not providing him with prior notice of the hearing. The board counters that it did not hold a hearing. Combs's evidence that a hearing occurred consists of his own affidavit, in which he avers that "someone" at the board told him on September 3 that his hearing request had been granted and that the hearing had already taken place. The board's evidence includes its meeting minutes, indicating that Combs's reconsideration request died for lack of a motion, and the affidavit of its deputy director, who prepared the minutes, averring that the minutes are accurate and that no hearing was held. On this record, Combs has not established by clear and convincing evidence that a hearing occurred. *See Disciplinary Counsel v. Jackson*, 81 Ohio St.3d 308, 311, 691 N.E.2d 262 (1998) ("When clear and convincing evidence is required, we are not disposed to let the matter turn on allegations of the possible failure of service and affidavits with possible hearsay evidence").

{¶ 19} Moreover, as Combs acknowledges, boards of elections have no legal duty to hold reconsideration hearings. Combs is correct that if a board nevertheless chooses to hold a hearing, it must provide notice to the parties. *See*

Secretary of State Directive 2019-18, Section 1.04, *Ohio Election Official Manual*, at 12-11.  But Combs has not asked us to order the board to hold a new hearing with proper notice, and he has not explained how the notice requirement (or a board's failure to meet it) would give rise to a clear legal right to the relief that he does seek in this action—an order compelling the board to verify his petition signatures and place his name on the ballot.

### III.  CONCLUSION

{¶ 20} Because Combs has not established a clear legal right to the relief he seeks or a clear legal duty on the part of the board to provide it, we deny the writ.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

_____

Isaac, Wiles, Burkholder & Teetor, L.L.C., Donald C. Brey, Mark R. Weaver, and Matthew R. Aumann, for relator.

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for respondent.

_____