[Cite as *State ex rel. Intl. Union of Operating Engineers, Local 20 v. State Employment Relations Bd.*, 2023-Ohio-1253.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. International Union of
Operating Engineers, Local 20,

        Relator-Appellant,

v.

State Employment Relations Board,

        Respondent-Appellee.

:

:

:

:

:

:

:

:

No. 22AP-515
(C.P.C. No. 21CV-3508)

(ACCELERATED CALENDAR)

D E C I S I O N

Rendered on April 18, 2023

**On brief:** *Law Office of Robert Mitchell*, and *Robert Mitchell*, for appellant. **Argued:** *Robert Mitchell*.

**On brief:** *Dave Yost*, Attorney General, and *Sherry M. Phillips*, for appellee. **Argued:** *Sherry M. Phillips*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Relator-appellant, International Union of Operating Engineers, Local 20 ("Union"), appeals from a decision and entry of the Franklin County Court of Common Pleas denying its request for a writ of mandamus ordering respondent-appellee, State Employment Relations Board ("SERB"), to find probable cause on the Union's claim of an unfair labor practice. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This matter involves the Union's claim of an unfair labor practice against the Board of Education of the Cincinnati City School District ("school district"). The Union, which is the exclusive bargaining unit of carpenter foremen and carpenters employed by the school district, alleged in its unfair labor practice charge that the school district violated

Ohio's collective bargaining law when it refused to pay double-time wages for work performed during the COVID-19 pandemic in accordance with the parties' collective bargaining agreement ("CBA"). More specifically, Article 8.2 of the CBA provides, in pertinent part:

> When schools are closed because of an epidemic or other public calamity, and employees are not required to report to work, any employee in this bargaining unit required to work during such calamity, shall receive double the regular rate.

Additionally, Article 19 of the CBA prohibits strikes and lockouts, stating "the Union agrees that it will not authorize any strike, work stoppage or other action during the term of this Agreement," and the school district "further agrees that it will not lock out its employees." Further, the CBA includes a grievance procedure and defines a grievance as "an alleged violation of a specific article and section of this Agreement arising under and during the term of this Agreement." (CBA Article 7.1.)

{¶ 3} In response to orders issued by the State of Ohio Department of Health in response to the COVID-19 pandemic, the school district closed on March 16, 2020. From March 16 through April 20, 2020, most Union members stayed home and received their regular wages; however, those union members that did report to work during that period received double-time wages.

{¶ 4} During this interim period, the school district negotiated memoranda of understanding with other unions representing a variety of non-teaching employees. Under these memoranda of understanding, the non-teaching employees agreed to return to work at straight-pay wage rates. However, the Union and the school district could not reach an agreement on a comparable memorandum of understanding under which the carpenters would work for straight-pay wages while the teachers worked remotely and students stayed at home. The parties disagreed about whether the double-time wages provision in CBA Article 8.2 continued to apply when some school district employees were reporting to work.

{¶ 5} After failing to reach an agreement, the school district advised the Union that, effective April 23, 2020, the school district had no necessary current work for the bargaining unit members of the Union to perform and, as a result, the school district advised it would no longer pay Union members. The school district reasoned that because school buildings remained closed and students and teachers remained at home, there were

no essential tasks that it needed Union carpenters to perform. The Union construed the school district's position as an improper lockout of the Union's bargaining unit members.

{¶ 6} On April 24, 2020, the Union executed a memorandum of understanding with the school district in which the Union members agreed to work for straight-pay wages. The memorandum of understanding provided that the school district "recognizes and agrees that bargaining unit employees returning to work under this [memorandum of agreement] might be entitled to double their regular rate of pay, pursuant to Article 8, Section 2 of the parties' CBA," but "[i]n the spirit of cooperation and shared sacrifice, the Union agrees to return to work at their regular rate of pay." (Memorandum of Agreement.) Beginning April 27, 2020, the Union members returned to work for normal hours at straight-pay wages. Despite signing the memorandum of understanding, the Union maintains it did not agree with the school board's interpretation of Article 8.2 of the CBA.

{¶ 7} Subsequently, on June 20, 2020, the Union filed its unfair labor practice charge with SERB, alleging the school district engaged in an illegal lockout from April 23 to April 27, 2020 in order to force the Union to accept only straight-time pay in lieu of double-time pay. The Union did not file a grievance with the school district in accordance with the terms of the CBA.

{¶ 8} After reviewing the evidence and the parties' responses, the SERB investigator issued a memorandum recommending SERB dismiss the Union's charge for lack of probable cause to believe that the school district had committed an unfair labor practice. SERB dismissed the charge with prejudice on September 3, 2020, finding no probable cause and concluding "the matter is purely contractual, encompassing no arguable statutory violation." (Dismissal of Unfair Labor Practice Charge.) SERB additionally concluded the Union did not present any evidence supporting a lockout violation or other violation of R.C. 4117.11(A). Lastly, SERB noted the issues had been resolved for over two months by the time the Union filed the unfair labor practice charge.

{¶ 9} The Union then filed a motion for reconsideration of the dismissal on October 5, 2020, arguing the dispute was not purely contractual and that the school district's refusal to allow the Union members to return to work unless the Union agreed to the school district's interpretation of the CBA constituted an improper lockout. SERB denied the motion for reconsideration.

{¶ 10} On June 4, 2021, the Union filed a petition for a writ of mandamus in the trial court to direct SERB to find probable cause of an unfair labor practice and proceed to a hearing. Both parties filed motions for summary judgment, and the trial court converted those motions into briefs pursuant to the terms of an April 11, 2022 stipulation. The trial court then denied the Union's petition for a writ of mandamus, finding SERB did not abuse its discretion in concluding the dispute was a matter of contractual interpretation of the parties' CBA and that the appropriate method of resolving a contractual dispute was through the grievance procedure contained in the CBA. Thus, the trial court concluded SERB did not abuse its discretion in dismissing the unfair labor practice charge for lack of probable cause. The trial court journalized its decision in a July 25, 2022 decision and entry. The Union timely appeals.

## II. Assignment of Error

{¶ 11} The Union assigns the following sole assignment of error for our review:

> The trial court erred in denying Relator's petition for writ of mandamus, concluding that SERB did not abuse its discretion by dismissing Relator's unfair labor practice charge for lack of probable cause.

## III. Analysis

{¶ 12} In its sole assignment of error, the Union argues the trial court erred in denying its petition for a writ of mandamus compelling SERB to find probable cause of the Union's unfair labor practice charge.

{¶ 13} "Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. To be entitled to a writ of mandamus, the Union must show: (1) it has a clear legal right to the requested relief, (2) that SERB is under a clear legal duty to provide the requested relief, and (3) the Union has no plain and adequate remedy in the ordinary course of law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, ¶ 13, citing *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 6.

{¶ 14} R.C. Chapter 4117 governs collective bargaining for public employees. Under R.C. 4117.12(B), SERB must issue a complaint and conduct a hearing on an unfair labor practice charge when it has probable cause for believing a violation has occurred.

Specifically, "[w]hen anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge." R.C. 4117.12(B). While R.C. Chapter 4117 does not define "probable cause," the Supreme Court of Ohio has construed the term, in the context of R.C. 4117.12(B), to require SERB to "issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred." *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 38.

{¶ 15} When SERB makes a probable cause determination under R.C. 4117.12(B), the probable cause determination is not reviewable by direct appeal. *State ex rel. Portage Lakes Edn. Assn.* at ¶ 35, citing *Ohio Assn. of Pub. School Emps., Chapter 643, AFSCME/AFL-CIO v. Dayton City School Dist. Bd. of Edn.*, 59 Ohio St.3d 159 (1991), syllabus. "Instead, in the absence of an adequate remedy in the ordinary course of law, 'an action in mandamus is the appropriate remedy to obtain judicial review of orders by [SERB] and dismissing unfair labor practice charges for lack of probable cause.' " *Portage Lakes Edn. Assn.* at ¶ 35, quoting *State ex rel. Serv. Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 81 Ohio St.3d 173 (1998), syllabus. Thus, a writ of mandamus will issue where SERB has abused its discretion in dismissing unfair labor practice charges. *Id.*; *State ex rel. Alben v. State Emp. Relations Bd.*, 76 Ohio St.3d 133, 135 (1996). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Portage Lakes Edn. Assn.* at ¶ 35, citing *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 92 Ohio St.3d 529, 533 (2001).

{¶ 16} "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61 (1988). While the trial court must examine the evidence, "[s]uch is not the charge of the appellate court." *Id.* Instead, the appellate court determines only whether the trial court has abused its discretion. *Id.* As to purely legal questions, however, this court exercises plenary review. *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 17} Through its petition for a writ of mandamus, the Union argued the school district committed an unfair labor practice pursuant to R.C. 4117.11(A)(1), (5), and (7). In pertinent part, R.C. 4117.11 provides:

> (A) It is an unfair labor practice for a public employer, its agents, or representatives to:
>
> (1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;
>
> * * *
>
> (5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code;
>
> * * *
>
> (7) Lock out or otherwise prevent employees from performing their regularly assigned duties where an object thereof is to bring pressure on the employees or an employee organization to compromise or capitulate to the employer's terms regarding a labor relations dispute.

{¶ 18} The Union asserts that the school district created an impermissible lockout and violated its rights under R.C. Chapter 4117 when it informed the Union it had no necessary current work for its members to perform beginning April 23, 2020 after the parties failed to reach an agreement on a memorandum of understanding related to a return to work on straight-pay wages. The Union argues the school district's negotiating tactic was designed to pressure the Union into agreeing to an interpretation of the CBA it would not have otherwise agreed to. When the school district informed Union members they would not be allowed back into buildings and would not be paid after April 22, 2020, the Union asserts it had no choice but to sign the memorandum of understanding agreeing to straight-pay wages. The Union argues this conduct is enough to demonstrate, at minimum, probable cause of an unfair labor practice such that SERB should have issued a complaint and proceeded to a hearing on the matter.

{¶ 19} SERB responds that it did not abuse its discretion when it dismissed the unfair labor practice charge for lack of probable cause because the Union did not demonstrate that the school district had committed a statutory violation of R.C. 4117.11(A). After conducting its investigation, SERB determined the issue of whether the carpenters wrongly refused to return to work unless they were paid double-time wages or whether the school district improperly refused to schedule the carpenters for work unless they agreed to straight-time pay was solely a contractual dispute related to the meaning of Article 8.2 of the CBA.

{¶ 20} As noted above, Article 8.2 of the CBA provides "[w]hen schools are closed because of an epidemic or other public calamity, *and employees are not required to report to work*, any employee in this bargaining unit required to work during such calamity, shall receive double the regular rate." (Emphasis added.) (CBA Article 8.2.) In its own Statement of Position provided to the SERB investigator, the Union stated it interpreted Article 8.2 as requiring double-time wages for carpenters unless *all* school district employees were working, while the school district interpreted the same language as requiring double-time wages for carpenters only where the carpenters were the *only* school district employees working. Thus, as the Union acknowledged the dispute related to differing interpretations of the CBA, SERB concluded the issue was purely contractual in nature. Because the CBA additionally included a grievance arbitration procedure, SERB concluded the Union's appropriate remedy would have been to file a grievance pursuant to the terms of the CBA. Therefore, SERB found there was no probable cause to support the Union's unfair labor practice charge and dismissed the claim.

{¶ 21} The trial court reviewed SERB's probable cause determination and found SERB did not abuse its discretion in finding no probable cause to support the unfair labor practice claim. Having reviewed the record, we agree with the trial court. Here, the Union repeatedly acknowledged the dispute was a matter of contract interpretation, both in its filings before SERB and in its petition for a writ of mandamus. The Union even reiterates its argument related to the differing contract interpretations in its appeal to this court. In other words, the Union's argument all along was that the school district was in violation of the terms of the CBA. For such a dispute, the Union's proper remedy was to follow the grievance procedure as set forth in the CBA and contemplated in R.C. 4117.10(A). The

Union's own failure to follow the grievance procedure in the CBA does not create probable cause to support its subsequent claim of an unfair labor practice. *See I.A.F.F. Local 92 v. Toledo*, 136 Ohio App.3d 56, 62 (6th Dist.1999) ("[r]esolution of alleged unfair labor practices are within the exclusive jurisdiction of the SERB" pursuant to R.C. 4117.12(A), but "the issue of whether the collective bargaining agreement has been violated is a matter to be resolved by arbitration" through the grievance procedure); *E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.*, 70 Ohio St.3d 125, 128 (1994) ("[t]he General Assembly's vesting of SERB with exclusive jurisdiction to determine unfair labor practices defined in R.C. 4117.11 was never meant to foreclose parties to a collective bargaining agreement from settling differences in interpreting provisions of their agreement through the process of binding arbitration") .

**{¶ 22}** The Union sets forth several arguments as to why both SERB and the trial court erroneously concluded there was no probable cause to support the unfair labor practice charge, all of which lack merit.  First, the Union asserts it is an oversimplification of the issue to view it as purely a contract dispute.  Though the Union acknowledges the parties had differing interpretations of the contract, it asserts the differing interpretations, themselves, are not the unfair labor practice.  Instead, the Union argues it was the manner in which the school district handled the differing contract interpretations that created the unfair labor practice.  Stated another way, the Union's position is not that there was a contractual dispute; it is that the school board, in announcing it intended not to call the carpenters to work, forced the Union to agree to an interpretation of the contract it did not want to agree to.

**{¶ 23}** The Union's position ignores, however, that the CBA also provided for a grievance procedure.  Thus, if the Union truly believed it was being coerced into signing, it could have filed a grievance to obtain immediate injunctive relief.  The Union chose not to do so, thereby undercutting its position that it had no choice but to sign the memorandum of understanding.  The Union does not explain why it did not avail itself of the grievance procedure.

**{¶ 24}** Additionally, the Union argues that concluding the matter is purely one of contract interpretation ignores the four-day period from April 23 to April 27, 2020 in which the Union says the school district effectively locked out the carpenters from work.  However,

by the time the Union filed its unfair labor practice claim with SERB, nearly two months had passed since it signed the memorandum of understanding agreeing to straight-pay wages. Moreover, by the time of the SERB investigation, the school district had paid the carpenters for the four-day period from April 23 to April 27, 2020, indicating the parties had resolved any remaining dispute.

{¶ 25} Finally, the Union asserts that refusing to find probable cause of an unfair labor practice represents an endorsement of the school district's conduct during these negotiations and could result in the school district refusing to pay double-time wages pursuant to Article 8.2 in the future. However, the memorandum of understanding related to the interpretation of Article 8.2 specifically states "[t]his agreement is reached on a non-precedent setting basis, and shall not constitute evidence of practice relative to the parties' interpretation or application of the current or any subsequent Collective Bargaining Agreement." (Memorandum of Understanding at 2.) Thus, the Union's stated concerns about future consequences of its own signing of the memorandum of understanding are unfounded given the express language of the agreement.

{¶ 26} For all of these reasons, we agree with the trial court that SERB did not abuse its discretion in determining that the Union did not demonstrate probable cause to support its claim of an unfair labor practice and in dismissing the claim. Accordingly, the trial court did not err in denying the Union's petition for a writ of mandamus. We overrule the Union's sole assignment of error.

## IV. Disposition

{¶ 27} Based on the foregoing reasons, the trial court did not err in denying the Union's petition for a writ of mandamus when it determined SERB did not abuse its discretion in finding no probable cause to support the Union's claim of an unfair labor practice. Having overruled the Union's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT, P.J., and EDELSTEIN, J., concur.

_____